Opinion
LILLIE, P. J.
Plaintiff, employed by defendant Los Angeles Unified School District (District) as an environmental health technician with permanent classified status, was placed on an indefinite involuntary illness leave without pay for a seven-month period, and was reinstated on his successful appeal to District’s Personnel Commission, pursuant to procedures set out in Los Angeles Unified School District Personnel Commission Rule 836B. (All further Rule references are to these rules.) By way of petition for writ of mandate and complaint for declaratory and injunctive relief, plaintiff sought a writ of mandate directing defendant to make him whole for all lost wages *100 and benefits lost during the time he was placed on involuntary illness leave, as well as declarations that Rule 836B was unconstitutional on its face and as applied to him, and that the procedures and delays employed by District deprived him of due process of law under the Fourteenth Amendment to the United States Constitution. Plaintiff appeals from the trial court’s judgment denying his petition for writ of mandate and entering judgment for defendants. The principal issues on appeal are whether the imposition of an indefinite involuntary illness leave of absence without pay for seven months impaired a protected property interest of plaintiff within the meaning of the Fourteenth Amendment to the United States Constitution, and if so, whether plaintiff was entitled to a predeprivation hearing prior to imposition of the leave of absence.[1]
Factual and Procedural Background
The material facts concerning the administrative proceedings are essentially undisputed.[2] Plaintiff George Bostean was, and is, a permanent classified employee of District; he began employment with District as an environmental health technician (BUT) in 1988. Bostean suffered from diabetes and *101 epilepsy. According to the class description by District’s Personnel Commission, an EHT performs standardized laboratory and sample collection procedures, including microscopic analyses of asbestos-suspect materials, performs health audits and investigations, and responds to emergencies involving fire, asbestos, and other toxic and hazardous materials.
In June 1993, Bostean began complaining to his supervisors about being exposed to fumes and hazardous materials while driving District’s van used for the transportation of hazardous materials, and about exposure to hazardous materials while working in certain designated areas. While in August 1993 Bostean filed a grievance against District asserting safety violations under a collective bargaining agreement, District’s director of environmental health and safety denied the grievance on the ground it was untimely.[3] Bostean took no steps to dispute District’s response, and the grievance was considered withdrawn.
On September 30, 1990, Dianne Doi (Doi), supervisor in the health and safety branch of District, sent a letter to Bostean’s physician, Dr. Donald Fields (Dr. Fields), asking him to clarify some restrictions imposed on Bostean’s ability to perform his duties. Dr. Fields responded that Bostean could perform all the duties of his position, except that he was limited in making microscopic analyses of materials containing asbestos and other harmful particulates because he complained that focusing on the microscope and counting and analyzing fibers gave him headaches and triggered signals of grand mal seizures; Dr. Fields also noted that Bostean was limited in working in crawl spaces and attics, which are not advised for people with epilepsy and diabetes; Bostean experienced dizziness, hypoglycemia and heat exhaustion after a short stay in these spaces; Bostean also could not safely lift and carry weights up to 50 pounds, or up to 250 pounds in 8 hours, and Bostean was limited to the Occupational Safety and Health Administration (OSHA) regulations regarding work and rest.
At the end of his work shift on November 24, 1993, Bostean’s supervisors Doi and Richard Lui informed him that he would be placed on involuntary *102 illness leave effective November 29, 1993. November 29 was the next workday after November 24, as November 25 through 28 were nonworking days due to holidays and the weekend. According to Doi’s declaration, “On November 24, 1993, I met with Mr. Bostean and Mr. Lui to discuss [Bostean’s] medical restrictions limiting his ability to perform the essential/ core duties of his job. In consultation with Shari McGee and Alfreda Theus [assistant personnel director], I put Mr. Bostean on involuntary medical leave until some of the restrictions were lifted and enabled him to perform the core functions of his duties.” Doi declares that at that time she also discussed other options and alternatives with Bostean, such as qualifying for current vacant positions, applying for promotion, transferring, voluntary demotion, submitting a resignation, or pursuing disability retirement, if he qualified.
Bostean contacted his union and requested representation by the California School Employees Association (CSEA); a representative was assigned to his case. A letter dated December 1, 1993, from Alfreda Theus (Theus), the classified assignments coordinator of District’s Personnel Commission, to Bostean, stated that Bostean was being placed on an indefinite involuntary illness leave from his job effective November 29, 1993, in accordance with Rule 836A.4, and “[t]his action has been taken based on information provided by your personal physician, Donald Fields, M.D. [¶] Even though we believe that this decision was reached with consideration of your welfare as well as that of the District, you do have the right to appeal this decision.” The letter stated that grounds for appeal would be accepted, if Bostean can provide evidence that (1) the decision was based on race, national origin, handicaps, sex, age, or health impairment related to cancer for which a person had been cured or rehabilitated; (2) there was an abuse of discretion; (3) reasons given for the action were not in accordance with the facts; and (4) the disqualification was not in accordance with health standards set forth in the rules of the board of education.
At no time prior to November 29, 1993, did District give Bostean notice of allegations pursuant to which he was placed on indefinite involuntary illness leave, and prior to November 29, he was not afforded an opportunity for a hearing on those allegations. The indefinite involuntary illness leave was without pay.
District Personnel Commission Rule 836 deals with appeals of medical disqualifications of classified employees and eligibles. Subdivision A.4 of the Rule permits appeal from “[placement of an employee on involuntary illness leave.” Subdivision B sets out the appeal procedure, providing in subdivision B.2 that “If appeal is made to the Commission, the appellant *103 shall be notified that the matter will be investigated and that the appellant bears the burden of proof. The appellant shall be invited to submit, in support of the appeal and at appellant’s expense, written medical or laboratory reports, X-rays, photographs, or other exhibits or written statements as appropriate.” Subdivision B.3 provides that “The Personnel Commission shall determine whether the appeal will be the subject of a special investigation or a hearing by a medical examiner.” Subdivision C provides in pertinent part that “A medical examiner is the representative of the Commission and is authorized to grant or refuse extensions of time, to set proceedings for examination of facts, to appoint a medical expert or specialist to examine the appellant, and to perform any and all acts in connection with such proceedings that may be authorized by these rules. . . . [¶] A medical examiner may appoint a medical expert or specialist to examine the appellant and report findings to the medical examiner or may require additional information from the appellant or the District.”
On December 15, 1993, Dr. Fields sent a second report to Doi clarifying and modifying Bostean’s restrictions. This report indicated that Bostean could fully perform all job duties, including microscopic analyses of materials and that he could work in crawl spaces and attics; however, the report indicated that Bostean expressed concern about wearing protective clothing or a respirator because increased heat created by the protective clothing causes him to sweat and negatively impacts his diabetic condition; wearing a Tyvek suit also causes Bostean to experience heat exhaustion and dizziness, which affects his hypoglycemia/diabetic condition. Thus, Dr. Fields indicated that Bostean could not wear a Tyvek suit “unless personal heat stress is monitored,” and “regulated work/rest is observed and monitored.” The report also indicated that Bostean could safely lift and carry up to 50 pounds, but only 30 pounds if wearing a Tyvek suit, respirator, or cooling down vest.
On January 5, 1994, Bostean’s representative telephoned the District’s Personnel Commission director and requested a hearing on the grounds that Bostean’s due process rights had been denied and that District’s action had caused Bostean loss of wages, exhaustion of sick leave, loss of vacation and other rights, and separation from employment for an indefinite period of time. By letter dated January 14, 1994, Bostean’s union representative demanded that District’s Personnel Commission afford Bostean an appeal of the decision to place him on involuntary illness leave. The representative stated that Bostean had been subject to disciplinary action without due process, and further, District did not make any efforts to provide reasonable accommodations to the specific needs derived from Bostean’s medical limitations that would provide him with the opportunity to continue to perform his job duties.
By letter of January 20, 1994, to Dr. Fields, Doi acknowledged receipt of Dr. Fields’s “revised medical evaluation” of Bostean, apparently referring to *104 his December 15, 1993, evaluation, and requested that he certify under Business and Professions Code sections 2234 and 2261 that Bostean was able to return to work without risk of injury or further injury to his existing medical conditions of epilepsy, diabetes, and hiatal hernia. Doi also sought clarification from Dr. Fields on certain issues, including the particular OSHA standard for heat stress and work/rest which Dr. Fields relied upon, and the labor laws regulating the handling of hazardous materials and the action levels for formaldehyde and chemicals known to affect neuropathy. By letter of February 18, 1994, Dr. Fields wrote to Doi and Bostean that he had received additional interrogatories from Doi concerning the dispute with Bostean, which interrogatories were beyond the scope of his professional education in occupational health, and requesting that both parties seek independent expertise on the matters from a subspecialist with interest in the field.
By letter dated February 11, 1994, Bostean’s union representative again wrote to District’s Personnel Commission that Bostean considered the action of District to be a violation of due process rights, that “involuntary illness leave, in this case, constitute^] disciplinary action,” that the procedures for taking disciplinary action had not been followed,[4] that there was an abuse of discretion, and the action taken was not in accord with the facts.
By letter dated February 22, 1994, District wrote to Bostean’s representative that District did not agree that its placement of Bostean on involuntary illness leave constituted a disciplinary action, and that District was processing the appeal under Rule 836. In March 1994, District’s deputy personnel director referred Bostean to Dr. Philip Harber for an evaluation. Even though Bostean signed releases to furnish Dr. Harber with the reports from Dr. Fields, District’s Personnel Commission did not furnish Dr. Fields’s reports to Dr. Harber. On April 19, 1994, Dr. Harber issued a letter report concluding that Bostean was capable of working as an environmental health technician and was capable of working in an unrestricted fashion while wearing protective equipment; however, Bostean should not be assigned to work at heights, in unstable settings, or in areas immediately dangerous to life and health.
On June 22, 1994, District’s Personnel Commission met, considered Dr. Harber’s report and adopted Dr. Barber’s recommendation, determining that *105 Bostean could return to work. A letter from the deputy personnel director to Bostean dated June 23, 1994, stated that the Personnel Commission adopted the medical examiner’s recommendation and granted his appeal from medical disqualification as an environmental health technician. On July 15, 1994, Bostean’s representative requested backpay for Bostean for the seven-month period he was denied pay under the involuntary illness leave; District stated it would not compensate for lost pay and benefits of an employee subject to an involuntary illness leave. After Bostean returned to work, he asked his supervisor, Doi, about backpay, and she told him that he was lucky to have his job back and had no backpay entitlement. In July 1994, Bostean was assigned a new supervisor, Gary Pons. On August 8, 1994, Bostean was promoted to his current position of safety officer.
On May 9, 1995, Bostean filed petition for writ of mandate and complaint for declaratory and injunctive relief against District, its Personnel Commission, the three individual members of the Personnel Commission, and the individual serving as personnel director for District; he filed a first amended petition and complaint on June 5, 1996.[5] Bostean alleged that the failure of defendants (hereinafter referred to collectively as District) to provide him with written notice of intended action and an opportunity to respond before imposing the indefinite involuntary illness leave, and the failure to afford him a hearing after imposition of the involuntary illness leave, violated the due process clause of the United States Constitution and deprived him of his rights under the Fourteenth Amendment, in violation of 42 United States Code section 1983. Bostean alleged that he had a property right in his permanent employment with District and District deprived him of that right without due process of law, causing him to suffer lost wages and employment benefits, including sick leave, vacation pay, and seniority credit from November 29, 1993, to June 22, 1994. Bostean further alleged that application of Rule 836B to him violated the due process clause of the Fourteenth Amendment of the United States Constitution because it shifted the burden of proof to the appellant in an appeal from an involuntary illness leave and failed to provide for a hearing when the appeal is the subject of a special investigation. Finally, Bostean alleged the excessive delays from November 29, 1993, to June 22, 1994, violated the due process clause of the Fourteenth Amendment, in violation of 42 United States Code section 1983.
Bostean’s petition and complaint sought, inter alia, declaratory relief that Rule 836B is unconstitutional on its face and as applied to him, and that the excessive and unreasonable delays deprived him of a right to a meaningful hearing in violation of the due process clause of the Fourteenth Amendment; he also sought a peremptory writ of mandate ordering District to make him *106 whole for all lost wages and benefits to which he was entitled from November 29, 1993, to June 22, 1994.
After filing a return to the petition for writ of mandate and complaint, District filed a memorandum of points and authorities wherein it argued, inter alia, that (1) Bostean’s claim for retroactive injunctive relief is barred under the immunity provision of the Eleventh Amendment to the United States Constitution; and (2) District did not violate Bostean’s due process rights because District provided an adequate postdeprivation remedy in December 1993, when Bostean was instructed to seek reasonable accommodation under District’s policy and procedures for individuals with disability; Bostean did not do so, thus abandoning an adequate postdeprivation remedy.[6] According to the declaration of Theus, Bostean lost no seniority as a result of the illness leave of absence.
At the hearing on October 23, 1996, the trial court asked the parties to brief the issue of whether the property right involved here “reaches the constitutional proportions” so as to state a cause of action under 42 United States Code section 1983. Citing Cleveland Board of Education v. Loudermill (1985) 470 U.S. 532 [105 S.Ct. 1487, 84 L.Ed.2d 494], Bostean’s brief argued that because he was a permanent classified employee of District, he had a property interest of which he was deprived when placed on unpaid involuntary illness leave. District submitted a supplemental brief arguing that Bostean “has failed to establish a property interest in a request for a predeprivation hearing under the due process clause,” and that “Skelly predeprivation requirements only are triggered by disciplinary actions,” and this matter did not involve disciplinary actions.
Upon submission of the matter, the court issued a statement of decision and judgment in favor of defendants on the first amended petition/complaint. The statement of decision recites in pertinent part that “Herein, the court determines that the procedure applied pursuant to Rule 836 was fair and proper under the circumstances. [Bostean’s] causes of action based on asserted federal law property interests pursuant to 42 U.S.C. section 1983 are, as a matter of law, not well founded. [¶] [Bostean] has failed to present federally protected property interest upon which to base a procedural due process claim. [His] due process claim arises from asserted economic or property rights, and such claims, do not in these circumstances, reach *107 constitutional or 42 U.S.C. section 1983 levels. [¶] Before due process protections will attach, plaintiff ‘clearly must have more than an abstract need or desire for [receiving the benefit]. He must, instead have a legitimate claim of entitlement to it.’ [Citations.] . . . [¶] Herein, [plaintiff] can claim no more than a unilateral expectation of a predeprivation hearing which cannot create a property interest. . . . Here, we conclude that Personnel Commission Rule 836B cannot reasonably infer certain limits on the Commission that it mandates only one result which would create in [Bostean] a mutual expectation of a governmental benefit. . . . The Rule’s election of choice in conducting an appeal demonstrates a freedom that militates against any effort to assert that there is substantial limits on the Commission’s use of discretion. [¶] [Bostean’s] request for a predeprivation hearing for his involuntary medical leave does not give him a property interest which reaches constitutional or 42 U.S.C. section 1983 levels. . . .”
Bostean filed timely notice of appeal from the judgment and contends that the trial court erred in concluding that he does not have a constitutionally protected property interest in his continued employment, and in concluding that the procedures afforded to him met due process requirements. Appellant contends that, in the instant case, federal principles of due process required notice and an opportunity to respond before the imposition of the involuntary unpaid illness leave. It is important to note that appellant’s petition and complaint below were predicated on federal principles of due process, although Bostean argued principles of due process under state law in his memorandum of points and authorities in the trial court, and requested that the trial court “order the petition and complaint amended to insert the words ‘federal and state’ before each reference to ‘due process.’ ” Inasmuch as there is no evidence that the trial court ever amended the pleadings, and appellant does not on appeal expressly raise any issues predicated solely on state law, we address the issues raised under federal due process principles.
I
Standard of Review
“Whether we treat the petition below as one for traditional mandate (Code Civ. Proc., §§ 1084-1094) or administrative mandate (id., § 1094.5), the standard of review is the same. Because [appellant’s] contention regarding procedural matters presents a pure question of law involving the application of the due process clause, we review the trial court’s decision de novo.” (Mohilef v. Janovici (1996) 51 Cal.App.4th 267, 285 [58 Cal.Rptr.2d 721].) Since the issue presented is on undisputed facts and one of law, we exercise our independent judgment. (Department of Corrections v. Office of *108 Admin. Hearings (1997) 53 Cal.App.4th 780, 784 [61 Cal.Rptr.2d 903].) Further, to the extent we are called upon to interpret statutes or rules dealing with employment of public employees, such issues involve pure questions of law which we resolve de novo. (See Riveros v. City of Los Angeles (1996) 41 Cal.App.4th 1342, 1349-1350 [49 Cal.Rptr.2d 238].)
In light of the foregoing, we find without merit respondent’s contention that the trial court’s judgment should be reviewed under the substantial evidence test. Also without dispositive significance to this appeal are respondent’s arguments that it “acted in appellant’s best interest by placing [him] on mandatory medical leave,” and that its action was “remedial,” undertaken “to protect the health and safety of District employees.” These are factual issues which, unattached to any procedural due process argument, were apparently not addressed below in the trial court, and are not cognizable on this appeal, or pertinent to the appellate issues. Also not supported by any pertinent authority is respondent’s argument that placing Bostean on an involuntary illness leave of absence did not constitute disciplinary action, but at most was tantamount to a temporary suspension, during which he received sick leave and vacation pay. Such argument does not address the concerns pertinent to an analysis of whether Bostean had a property interest in his continued employment within the meaning of the Fourteenth Amendment to the United States Constitution. Significantly, in the trial court, District conceded that as a permanent employee, Bostean had a property interest in his employment; however, District framed the issue in its supplemental brief below as whether Bostean “has a property interest in a request for a predeprivation hearing under federal law.” District appears to confuse two issues which are conceptually distinct. The first issue is whether District’s actions implicated Bostean’s property interest under federal due process analysis, and if so, the second issue is whether the procedural protections afforded were adequate. Both issues were clearly raised by Bostean below and both are addressed by the trial court’s judgment. Accordingly, we proceed to discuss the issue of whether Bostean had a property interest subject to due process protection under the Fourteenth Amendment.
II
Bostean Had a Property Interest in His Continued Employment With District
“The Fourteenth Amendment to the United States Constitution ‘places procedural constraints on the actions of government that work a deprivation of interests enjoying the stature of “property” within the meaning of the Due Process Clause.’ ” (Coleman v. Department of Personnel *109 Administration (1991) 52 Cal.3d 1102, 1112 [278 Cal.Rptr. 346, 805 P.2d 300].) “Property interests that are subject to due process protections are not created by the federal Constitution. ‘Rather, they are created, and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law.’ ” (Ibid.) Thus, it has been held, with respect to a state civil service employee of the state Department of General Services, that “California’s statutory scheme regulating employment in civil service ‘confers upon an individual who achieves the status of “permanent employee” a property interest in the continuation of his [or her] employment which is protected by due process.’ ” (Ibid., citing Shelly v. State Personnel Bd. (1975) 15 Cal.3d 194, 206 [124 Cal.Rptr. 14, 539 P.2d 774].) Thus, “. . . a property right in public employment is a creation of state law. [Citation.] The statutory terms that define a particular right to employment determine its dimensions and scope.” (Coleman v. Department of Personnel Administration, supra, 52 Cal.3d at p. 1114.)
“ ‘The greater the interest and protection accorded an interest by such substantive law, the more reasonable is the holder in expecting to continue to enjoy it and in making decisions in reliance upon that expectation, and the less reasonable it is for the state to interfere directly with that enjoyment without according a fair opportunity to the holder to contest that interference.’ ” (Nichols v. County of Santa Clara (1990) 223 Cal.App.3d 1236, 1242 [273 Cal.Rptr. 84], italics omitted.) Thus, a reasonable expectation of entitlement is “determined largely by the language of the statute and the extent to which the entitlement is couched in mandatory terms. Although procedural requirements ordinarily do not transform a unilateral expectation into a protected property interest, such an interest is created if the procedural requirements are intended to be a significant substantive restriction on . . . decision making.” (Stiesberg v. State of California (9th Cir. 1996) 80 F.3d 353, 356.) Accordingly, “ ‘ “[w]hile the legislature may elect not to confer a property interest in [public] employment, it may not constitutionally authorize the deprivation of such interest, once conferred, without appropriate procedural safeguards.” ’ ” (Coleman v. Department of Personnel Administration, supra, 52 Cal.3d at p. 1114.)
It is undisputed that Bostean was, and is, a permanent classified employee of District. Education Code section 45302 provides that “No person in the permanent classified service shall be demoted or removed except for reasonable cause designated by rule of the commission as detrimental to the efficiency of the service. This section shall not be construed to prevent layoffs for lack of work or lack of funds.” Education Code section 45304, subdivision (a), provides in pertinent part that “For reasonable causes, an employee may be suspended without pay for not more than 30 *110 days, except as provided in this section, or may be demoted or dismissed.” The foregoing statutory provisions establish that reasonable cause is required for demotion, removal, suspension, or dismissal. With respect to the termination of employment of a permanent state civil service employee, it has been held that “In the absence of sufficient cause, the permanent employee has a statutory right to continued employment free of these punitive [disciplinary] measures. [Citation.] This statutory right constitutes a ‘legitimate claim of entitlement’ to a government benefit within the meaning of [Board of Regents v. Roth (1972) 408 U.S. 564 [92 S.Ct. 2701, 33 L.Ed.2d 548]]. Therefore, the state must comply with procedural due process requirements before it may deprive its permanent employee of this property interest by punitive action.” (Shelly v. State Personnel Bd., supra, 15 Cal.3d 194, 207-208.)
While the United States Supreme Court has not yet resolved the issue of whether “the protections of the Due Process Clause extend to discipline of tenured public employees short of termination” (Gilbert v. Homar (1997) 520 U.S. 924, _ [117 S.Ct. 1807, 1811, 138 L.Ed.2d 120, 126]), our California Supreme Court has acknowledged with respect to short-term suspensions of civil service employees that “[suspension of a right or of a temporary right of enjoyment may amount to a ‘taking’ for ‘due process purposes’ ” (Civil Service Assn. v. City and County of San Francisco (1978) 22 Cal.3d 552, 560 [150 Cal.Rptr. 129, 586 P.2d 162]) and the court had “no hesitancy in holding that ‘due process’ applies here; the question remains what process is due?” {Ibid.) In the instant case, District’s action in placing Bostean on involuntary illness leave of absence without pay deprived Bostean of seven months’ salary, and was tantamount to a suspension without pay. It has been recognized that “retaining employment is a significant interest. The potential deprivation of a person’s means of livelihood demands a high level of due process.” (Baird v. Cutler (D. Utah 1995) 883 F.Supp. 591, 602.) Moreover, in light of the fact that such action had an adverse effect on at least some of his benefits, and his receipt of salary, and in light of the fact that the leave of absence was imposed without Bostean’s application or consent, it can properly be viewed as punitive or disciplinary.[7] The Supreme Court of Minnesota has recognized that a policy which required a county employee seeking elective office to be placed on temporary *111 unpaid leave of absence for four months, “even though only temporary, subjected him to a financial loss of a magnitude sufficient to constitute a deprivation of a property interest which invokes the procedural protection afforded by the fourteenth amendment to the United States Constitution.” (Martin v. Itasca County (Minn. 1989) 448 N.W.2d 368, 370.)
In Barberic v. City of Hawthorne (C.D.Cal. 1987) 669 F.Supp. 985, involving a police officer who was involuntarily retired on a disability, the court stated that it found no significant distinction for the purpose of constitutional due process analysis between forced disability retirement and discharge. (Id. at p. 990.) Moreover, although Barberic “did receive one half of her salary and other employment benefits upon retirement, this is not a sufficient basis for distinction. Upon retirement Barberic did not retain her job, her full salary, all of her benefits, and her opportunities for advancement within the department. The cases hold that there can be a deprivation of property even where the employee is merely demoted rather than fired .... [H] . . . Based on the existing law holding that a nonprobationary police officer has a property interest in maintaining her job in the absence of good cause, the court finds that this property interest can be impaired by way of involuntary disability retirement as well as by discharge and other punitive action.” (Ibid.)
We find the reasoning in Barberic persuasive in the instant circumstances, and it supports the conclusion that Bostean had a protectable property interest in maintaining his job, which was impaired when he was involuntarily placed on an illness leave of absence without pay. A similar interest was recognized under Illinois law in Ceko v. Martin (N.D.Ill. 1990) 753 F.Supp. 1418, involving a 911 police dispatcher who, after being hospitalized for treatment of psychological illness and diagnosed with schizophrenia, was placed on unpaid medical leave of absence. The court stated that “While it is true that Ceko was not removed from employment in the strict sense of the term, he was effectively deprived of his salary when he was placed on involuntary leave of absence. Contrary to defendants’ position, such a deprivation arouses due process concerns.” (Id. at pp. 1422-1423.) Relying on Ceko, the court in Golbeck v. City of Chicago (N.D.Ill. 1992) 782 F.Supp. 381, found that a police captain suspended without pay for three days had a protected property interest in continued employment and that the three-day suspension without pay was not de minimis in the circumstances. (Id. at p. 385, fn. 8.)
*112 In light of the foregoing authorities, we conclude that the trial court erred in concluding that Bostean did not have a federally protected property interest in his continued employment within the meaning of due process principles of the Fourteenth Amendment. Clark v. City of Hermosa Beach (1996) 48 Cal.App.4th 1152 [56 Cal.Rptr.2d 223], cited by the trial court and respondent, is inapposite; that case involves the denial of a land development permit. We now proceed to address the issue of what process is due. Appellant contends that he was entitled to notice and an opportunity to respond prior to imposition of the unpaid leave of absence.
III
Bostean Was Entitled to a Predeprivation Hearing
What procedures are constitutionally required under the Fourteenth Amendment if the state seeks to deprive a person of a protected interest is determined by federal law, not state law. (Voigt v. Saveli (9th Cir. 1995) 70 F.3d 1552, 1563.)
Although due process generally requires that an individual be given an opportunity for a hearing before he is deprived of any significant property interest (Sanchez v. City of Santa Ana (9th Cir. 1990) 915 F.2d 424, 429), the United States Supreme Court has “ ‘rejected the proposition that [due process] always requires the State to provide a hearing prior to the initial deprivation of property.’ ” (Gilbert v. Homar, supra, 520 U.S. at p._[117 S.Ct. at p. 1812, 138 L.Ed.2d at p. 127], citing Parratt v. Taylor (1981) 451 U.S. 527, 540 [101 S.Ct. 1908, 1915, 68 L.Ed.2d 420].) “Two well-established exceptions exist: (1) where the property deprivation is the result of random and unauthorized conduct by a state employee such that meaningful predeprivation process is not possible; or (2) where protection of the public interest requires an immediate seizure of property without a hearing.” (Sanchez v. City of Santa Ana, supra, 915 F.2d at p. 429, fn. 4.)
“It is by now well established that ‘ “[d]ue process,” unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances.’ [Citation.] ‘[D]ue process is flexible and calls for such procedural protections as the particular situation demands.’ [Citation.] This Court has recognized, on many occasions, that where a State must act quickly, or where it would be impractical to provide predeprivation process, postdeprivation process satisfies the requirements of the Due Process Clause.” (Gilbert v. Homar, supra, 520 U.S. at p:_[117 S.Ct. at p. 1812, 138 L.Ed.2d at p. 127].) “ ‘An important government interest, accompanied by a substantial assurance that the deprivation is not baseless or *113 unwarranted, may in limited cases demanding prompt action justify postponing the opportunity to be heard until after the initial deprivation.’ ” (520 U.S. at p._[117 S.Ct. at p. 1812, 138 L.Ed.2d at p. 127].) Thus, the Supreme Court in Gilbert rejected the Court of Appeals’ reliance on dictum in Cleveland Board of Education v. Loudermill, supra, 470 U.S. 532 as suggesting that a suspension without pay must in all instances be preceded by notice and an opportunity to be heard. “To say that when the government employer perceives a hazard in leaving the employee on the job it ‘can avoid the problem by suspending with pay’ is not to say that that is the only way of avoiding the problem. Whatever implication the phrase ‘with pay’ might have conveyed is far outweighed by the clarity of our precedents which emphasize the flexibility of due process as contrasted with the sweeping and categorical rule adopted by the Court of Appeals.” (Gilbert v. Homar, supra, 520 U.S. at p. _ [117 S.Ct. at p. 1812, 138 L.Ed.2d 120, 127-128].)
Thus, to determine what process is constitutionally due, “we have generally balanced three distinct factors: [¶] ‘First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government’s interest.’ Mathews v. Eldridge [(1976)] 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 . . . .” (Gilbert v. Homar, supra, 520 U.S. at p._ [117 S.Ct. at p. 1812, 138 L.Ed.2d at p. 128].) The purpose of any presuspension hearing would be to assure that there are reasonable grounds to support the suspension without pay. (Id. at p._[117 S.Ct. at p. 1813, 138 L.Ed.2d at p. 129].) In determining what process is due, account must be taken of the length and finality of the deprivation; as long as the suspended employee receives a sufficiently prompt postsuspension hearing, the lost income is relatively insubstantial, compared with termination, and fringe benefits such as health and life insurance are often not affected at all. (Id. at p— [117 S.Ct. at p. 1812,138 L.Ed.2d at p. 128].) Moreover, the employee has an interest in seeing that a decision concerning his continued suspension is not made with excessive haste, for if the state is forced to act too quickly, the decision maker may give greater weight to the public interest and leave the suspension in place. (Id. p._[117 S.Ct. at p. 1814, 138 L.Ed.2d at p. 130].)
As acknowledged by the court in Gilbert, an employee has a “significant private interest in the uninterrupted receipt of his paycheck” (520 U.S. at p. _ [117 S.Ct. at p. 1813, 138 L.Ed.2d at p. 128]), thus indicating that the interest affected by state action in the instant case is significant, weighing heavily in favor of a predeprivation hearing if there is no countervailing state interest warranting immediate action. There is no *114 explanation in our record as to why District stopped “informally accommodating” Bostean in November 1993, and placed him on illness leave of absence. There is no evidence in the instant record that Bostean’s remaining on his job posed any immediate threat to his health and safety or that of any other person. Bostean declared that from August 8 to September 30,1993, he did not express any concerns that he was not able to perform the tasks of his position within Dr. Fields’s restrictions. Therefore, there is no evidence in our record identifying an interest sufficiently substantial which warranted District in acting promptly and postponing an opportunity to be heard until after Bostean was placed on involuntary illness leave of absence without pay.
In addition, nothing in the record indicates that Bostean’s medical condition had changed from July to November 1993, warranting prompt action and justifying the postponement of an opportunity to be heard until after District’s action. Accordingly, District’s claim that its action was based on Bostean’s best interests and alleged “co-worker safety” is not supported with any evidence. Thus, even granting some weight to District’s claim of an interest in employee safety and health, District’s interest would have remained the same over time, while Bostean’s interest increased as he lost more salary and benefits as time passed during the pendency of his appeal to District’s Personnel Commission, as to which appeal he was successful. Under the particular circumstances presented on this record, we can only conclude that a predeprivation hearing would have assured whether or not there were reasonable grounds to support imposition of the leave of absence without pay.
Further weighing in favor of a predeprivation hearing in this case is the third Mathews v. Eldridge (1976) 424 U.S. 319 [96 S.Ct. 893, 47 L.Ed.2d 18] factor, risk of an erroneous deprivation through the procedures used. In this case, Bostean had no prior notice that his supervisor’s queries to his physician about his medical limitations were actually preliminary to an involuntary illness leave of absence, as opposed to efforts to attempt to accommodate his medical conditions or to ameliorate alleged unsafe work conditions. Doi admits in her declaration that from July through November 1993, Bostean “was informally accommodated” at work, and when Bostean expressed concerns that certain tasks would impact his health, the work was reassigned to other staff. Significantly, this time period of “informal accommodation” included the time period when Bostean’s grievance regarding an unsafe work environment was pending. Although Bostean’s grievance was eventually deemed withdrawn, District’s director of environmental health and safety, Susie Wong, in a September 8, 1993, letter, states that although she was declining to process the grievance further, *115 Bostean’s allegations were nevertheless being investigated, and District admitted that on Bostean’s suggestion, the hazardous materials van was being equipped with air-conditioning.
Thus, it can be inferred from the instant record that in the context of a grievance relating to alleged unsafe working conditions, District was collecting information regarding Bostean’s medical condition for a purpose—an illness leave of absence—of which Bostean and his physician were not aware and informed. Thus, the fact that prior to November 24, 1993, District had consulted Dr. Fields regarding aspects of Bostean’s medical condition, and the fact that Bostean was apparently aware of, and involved in developing, the District’s questionnaire for Dr. Fields, do not constitute constitutionally adequate notice that District would then rely upon such information in placing him on involuntary illness leave of absence. District argues that its November 24 notice to Bostean was sufficient because it occurred before the actual commencement of the leave of absence on November 29. However, as a practical matter, Bostean had no predeprivation opportunity to be heard prior to the leave of absence, which commenced on the next workday after November 24. Moreover, the notice afforded on November 24 was not notice of charges or allegations, with an opportunity thereafter to be heard on the charges and allegations; rather, the notice was notice of an immediate action that District had already decided to take after receiving information from Dr. Fields.
The risk of miscommunication, misinterpretation, and factual error is extremely great in such circumstances, and is evidenced by the fact that Doi and other supervisors, not medical practitioners, had great difficulty interpreting Dr. Fields’s October 1993 report. She actually interpreted it in a manner entirely different than Bostean (see fn. 2, ante), thus apparently necessitating her further communication with Dr. Fields, and eventually his preparation of another report in December 1993. Dr. Fields’s December 1993 report also apparently left Doi’s questions unanswered, so Doi sent a list of questions for Dr. Fields to answer. As Dr. Fields admitted, the information which Doi sought from him was outside his area of expertise, thus eventually leading District to send Bostean to Dr. Harber for an evaluation.
All of the foregoing procedures consumed five months. Had District provided Bostean with written notice of the charges and issues which were being considered and had it afforded an opportunity to be heard on those charges or issues prior to the action of placing him on involuntary leave of absence, it is probable that this matter would have been more quickly and accurately resolved without deprivation of Bostean’s property interest. *116 Bostean and Dr. Fields would have been informed of the true issues at stake and the purposes for, and consequences of, the medical reports. Rather, the procedures employed herein only led to confusion and miscommunication.
In Doi’s declaration submitted in connection with the hearing in the trial court, she states that Bostean was placed on involuntary illness leave of absence because he was unable to perform “core” or “essential” functions of his job; to support this conclusion, she was apparently relying upon Dr. Fields’s October report, which she admitted was “conflicting” and needed clarification. In the trial court, Bostean declared that Dr. Fields’s October 1993 report does not support District’s conclusion, and further, Bostean had never seen any analysis of “core” or “essential” position functions; Dr. Fields’s reports covered all the duties of his position, without any analysis of what constitutes a “core” or “essential” function. Bostean also disputed that Dr. Fields’s reports indicated strict limitations on his ability to do his job; rather, he maintained that the reports refer to the need to comply with OSHA requirements. Accordingly, our record reveals that, at least up to the time District placed Bostean on involuntary illness leave of absence, District was acting at cross-purposes to those apparently motivating Bostean, thus increasing the risk of receipt of erroneous or incomplete information and an erroneous deprivation of a protected property interest. Apparently, Bostean was confronted with Doi’s allegations about his inability to perform alleged core or essential job functions for the first time in the trial court, in District’s memorandum of points and authorities in opposition to his petition for writ of mandate.[8] Had District afforded Bostean notice of its allegations and an opportunity to respond prior to imposing an involuntary leave of absence, it is likely that the matter would have been resolved more quickly, because it would have been clear to District that Dr. Fields was not qualified to provide the information District sought. Under the procedures employed here, District only learned after it had taken adverse action against Bostean that Dr. Fields, upon whom District had apparently relied, was not qualified to provide District with information it deemed pertinent. Thus, the procedures followed by District herein cannot be said to afford a reliable method for developing reasonable grounds to support the imposition of an involuntary illness leave of absence without prior notice and hearing.
The circumstances herein are distinguishable from those in Gilbert, where a police officer employed by a state university was immediately suspended after he was charged with felony possession of marijuana. In balancing the *117 Mathews factors, the court held that . . the State has a significant interest in immediately suspending when felony charges are filed against them, employees who occupy positions of great public trust and high public visibility, such as police officers.” (Gilbert v. Homar, supra, 520 U.S. at p. _[117 S.Ct. at p. 1813, 138 L.Ed.2d at p. 128].) Moreover, in addressing the issue of the risk of an erroneous deprivation, which the court characterized as the factor most important to resolution of the case, the court stated that the criminal procedures of arrest and formal charge by complaint “serve to assure that the state employer’s decision to suspend the employee is not ‘baseless or unwarranted,’ ... in that an independent third party has determined that there is probable cause to believe the employee committed a serious crime.” (Id. at p_[117 S.Ct. at p. 1814, 138 L.Ed.íd at p. 129].) In the instant case, there was no such collateral or related proceeding in which Bostean was involved which could have assured his supervisors that the decision to place him on involuntary illness leave was medically warranted.
Further weighing in Bostean’s favor in the balancing of factors is District’s denial of backpay and benefits for the substantial period of time— seven months—while he was on involuntary illness leave of absence. District’s rules apparently do not afford the successful employee in Bostean’s position the right to be made whole as a result of a favorable ruling in a postdeprivation hearing. Thus, there is no indication in this record that there were any additional or substitute procedural safeguards to remedy the erroneous deprivation of a property interest. The procedures in Rule 836B also do not contain any provisions to guarantee that the appellant is afforded a timely postdeprivation hearing or any method for Bostean to attempt to resolve the appeal more quickly.
Thus, given the circumstances revealed in the instant record, a balancing of the three Mathews v. Eldridge factors must lead to the conclusion that Bostean was deprived of his property interest without due process of law under the Fourteenth Amendment because he was not afforded notice and an opportunity to respond prior to being placed on involuntary illness leave of absence. Accordingly, the trial court erred in failing to grant Bostean’s petition for writ of mandate.[9]
 “California courts have consistently held that a public employee who has been deprived unlawfully of his *118 position is entitled to recover the full amount of the salary which accrued to him from the date of his unlawful discharge to the date of his reinstatement, and mandamus is a proper vehicle to compel payment of back salary.” (Wilkerson v. City of Placentia (1981) 118 Cal.App.3d 435, 443 [173 Cal.Rptr. 294].) Similarly, to the extent that Bostean was paid a salary during the time of his involuntary leave of absence because he used sick or vacation time, he would be entitled to mandamus relief directing that District credit him with that time, which he would have lost as a result of the wrongful deprivation by District. On remand the trial court may also address the issue of attorney’s fees sought by Bostean under 42 United States Code section 1988.
In light of our conclusion that appellant is entitled to mandamus relief under federal constitutional due process principles, we need not address any state law theories which appellant may have intended to, or did, assert in his briefs, or his argument that the initial decision, made by administrators rather than medical professionals, violated due process of law, or his request for declaratory relief. (See fn. 1, ante.) Moreover, given the fact that appellant prevailed on his appeal to District’s Personnel Commission, there is no need for a remand to that body, or for us to address the adequacy of postdeprivation procedures. We also need not here detail the different forms of predeprivation notice and hearing procedures which would have complied with due process principles, and do not intend to suggest that Bostean should have been afforded a full evidentiary hearing. Inasmuch as appellant was denied any form of predeprivation notice and opportunity to be heard, even the most informal, he was wrongfully deprived of a property interest, entitling him to a writ of mandate directing that District reinstate his lost benefits and/or salary for the period from November 29, 1993, to June 22, 1994.
Disposition
The judgment is reversed and the cause is remanded to the trial court for further proceedings consistent with the views expressed herein. Appellant is entitled to costs on appeal.
Johnson, J. concurred.

Although appellant’s opening brief does not expressly mention Rule 836, or argue the issue of declaratory relief as to the constitutionality of the Rule, appellant’s reply brief does argue that the rule is constitutionally infirm. It is unclear whether appellant is interpreting Rule 836A as permitting placement of employees on involuntary illness leave of absence without predeprivation hearings, and is challenging Rule 836A as unconstitutional on that ground, or whether appellant is reiterating the claim, made below, that the appeal procedures in Rule 836B are unconstitutional. Inasmuch as the issue of whether Rule 836A is unconstitutional was not raised below, this issue is not preserved for appeal. With respect to the appeal rights and procedures set out in Rule 836B, our disposition of other issues renders this issue moot. Moreover, appellant prevailed on his appeal to District’s Personnel Commission, so we question whether the constitutionality of Rule 836B is properly before us. Even if such issue has been preserved for appeal, it is not necessary to address it in light of our disposition of other issues. We thus decline to address the issue of the constitutionality of Rule 836B as applied to appellant and on its face.

In opposition to the petition and complaint, defendants submitted a declaration of Dianne Doi wherein she declared that in October 1993, Dr. Donald Fields submitted “strict limitations on Mr. Bostean’s ability to perform the essential functions of the job of Environmental Health Technician,” and that “conflicting recommendations” were received from Dr. Fields. Inasmuch as Dr. Fields’s reports are contained in our record, we set out the contents of those reports and consider Doi’s declaration to be merely her characterizations of the October report, and as such, her declaration does not create a factual dispute as to Dr. Fields’s report. In instances where declarants are characterizing letters or documents in our record, we set out the contents of the documents and disregard the characterizations made by declarants. To the extent that the trial court’s statement of decision, ordered by the court to be prepared by District, incorporated factual findings consistent with the characterizations of Dr. Fields’s report as made in Doi’s declaration, we disregard such findings because they are not pertinent to resolution of the issue of whether the administrative proceeding was procedurally fair under federal due process principles.

Bostean alleged in his grievance that the lack of a proper vapor barrier between the cargo area and the cabin of the white hazardous materials van which he drove on the job caused toxic vapors to be released into the cabin through broken seal caulking; when he requested air-conditioning in the van, and a proper vapor barrier, and reported hazardous conditions about his work area to his supervisor, he was the subject of retaliation and harassment on the job; his beeper and coffee mug were stolen, he was derided by his supervisor, denied promotional opportunity, and given a poor performance evaluation in July 1993. In a September 8, 1993, letter from Susie Wong, District’s director of environmental health and safety, to Bostean’s union, Wong wrote that since Bostean had not been assigned work in the van since August 6, 1993, the grievance filed by Bostean on September 1, 1993, was untimely; further, District alleged that the van was safe, but as a precautionary measure, District was performing an assessment for toxic vapors in the van; although air-conditioning was not a requisite for safety, District was installing air-conditioning.

Pursuant to Rule 903, dealing with procedures for disciplinary actions, the employee is entitled to a notice of unsatisfactory service no less than 14 days prior to the effective date of demotion or dismissal, or not more than 126 days before the effective date of a suspension; prior to taking disciplinary action, the employee is entitled to a meeting with the responsible administrator to discuss the matter and the employee is entitled to be accompanied by a union representative; within 10 days after the demotion, dismissal or suspension, District was to file a statement of charges advising the employee of his right to answer the statement and the time within which an answer must be filed if it is to constitute an appeal.

Only District has filed a respondent’s brief on appeal.

According to the verified first amended petition and complaint, District sent Bostean in December 1993, a copy of District’s policies and procedures relating to reasonable accommodations for persons with disability; however, when Bostean contacted District’s coordinator of personnel services for the disabled, the coordinator told him that his issue was “not of medical disability,” but rather “related to safety,” and told Bostean to contact CAL OSHA.

Although District may not fall within the two exceptions to application of the definitions set out in Education Code section 45101 (see Ed. Code, § 45101, last two paragraphs, containing exceptions for districts incorporating the merit system set out in Ed. Code, § 45240 et seq. and for districts with a certain level of average daily attendance), were the latter definitions to be applicable, a demotion within the meaning of Education Code sections 45302 and 45304 would be defined as an “assignment to an inferior position or status, without the employee’s written voluntary consent” (Ed. Code, § 45101, subd. (d)), and disciplinary action would include “any action whereby an employee is deprived of any classification or any incident of any classification in which he has permanence, including dismissal, suspension, *111 demotion, or any reassignment, without his voluntary consent, except a layoff for lack of work or lack of funds.” (Ed. Code, § 45101, subd. (e).) District’s Rule 500 defines suspension as “Temporary removal of an employee from a position for cause without pay or indefinite removal preliminary to investigation of charges pursuant to the provisions of the second paragraph of Section 45304 of the Education Code.”

Not even the formal letter of December 1, 1993, to Bostean from Theus, informing Bostean of his being placed on involuntary illness leave, sets out any charges or detailed reasons. The letter simply states that the action was taken based on information provided by Dr. Fields and “was reached with consideration of your welfare as well as that of the District.”

The concurring and dissenting opinion would uphold 30 days of Bostean’s “involuntary illness leave,” apparently based on the provisions of Education Code section 45304. However, Bostean prevailed on his appeal to District’s Personnel Commission, and our record does not indicate any finding that District had “reasonable causes” within the meaning of Education Code section 45304 to justify District’s action. Moreover, the due process violation in this case involved a failure to provide adequate notice, as well as the opportunity for a meaningful and timely hearing. Accordingly, the initial action of District on November 24, 1993 (effective November 29, 1993), constituted an unlawful deprivation, for. which Bostean is *118 entitled to redress. We also note that District never characterized its action as a “suspension,” and did not purport to follow the procedures set out in Education Code section 45304 or Rules 500 and 903. District never established that it met the requirement for notice of charges in Education Code section 45304, and we question whether Theus’s letter of December 1, 1993, adequately placed Bostean on notice of any specific charges forming the basis for District’s action.