[No. B036238. Second Dist., Div. Five. Sept. 14, 1990.]

ROBERT NICHOLS et al., Plaintiffs and Appellants, v.
COUNTY OF SANTA CLARA et al., Defendants and Respondents.

## COUNSEL

Robinson, Robinson & Phillips, Mark P. Robinson and John D. Rowell for Plaintiffs and Appellants.

Steven M. Woodside, County Counsel, and Vanessa A. Zecher, Deputy County Counsel, for Defendants and Respondents.

## OPINION

**ASHBY, Acting P. J.**—In this case we hold that a county sheriff has discretion to revoke a license to carry a concealed firearm issued pursuant to Penal Code section 12050. In connection with such revocation, the sheriff is not required to hold a "due process hearing," because the licensee has no constitutionally protected "property" or other interest in such a license.

The Sheriff of Santa Clara County issued to plaintiff and appellant Robert Nichols a license to carry a concealed firearm pursuant to Penal Code section 12050. The sheriff subsequently revoked Nichols's license. Nichols and his corporate employer (appellants) filed this suit for money damages for violation of federal civil rights (42 U.S.C. § 1983) against defendants and respondents County of Santa Clara, Sheriff Robert E. Winter and Undersheriff Lawrence Kelly. The theory of the action is that respondents violated Nichols's constitutional right to due process by revoking the license without a hearing for Nichols to present evidence on his behalf. Appellants appeal from the trial court's order of dismissal following the sustaining of a demurrer, without leave to amend, to appellants' third amended complaint.

We affirm. The trial court properly sustained the demurrer because appellants failed to allege any constitutionally protected interest in the license to carry a concealed firearm.

## FACTS

As alleged in the third amended complaint, plaintiff and appellant Robert Nichols was licensed by the Sheriff of Santa Clara County to carry a concealed firearm. Nichols is president of plaintiff and appellant Meridian Arms Corporation, a subsidiary of Meridian International Logistics Corporation. Meridian is a weapons manufacturer, and Nichols's license to carry a concealed firearm allegedly "is necessary and essential" to Nichols's livelihood and beneficial to appellants' business.

On or about April 9, 1986, Nichols was arrested in Los Angeles. Los Angeles police allegedly communicated false statements to respondents that Nichols "displayed a poor attitude toward police officers while under the influence of alcohol" and in effect was unfit to hold a license to carry a concealed firearm.

On the basis of the communication from Los Angeles police, respondents revoked Nichols's license. Respondents did not give Nichols an opportunity to be heard to present evidence on his behalf, either before or after the revocation.[1]

## DISCUSSION

Any person who carries concealed upon his or her person any pistol, revolver, or other firearm capable of being concealed upon the person, without having a license to carry such firearm, is guilty of a misdemeanor. (Pen. Code, § 12025, subd. (b); see also Pen. Code, § 12031, subds. (a), (b)(6) [carrying loaded firearm in a public place without license].)

Penal Code section 12050 provides: "(a) The sheriff of a county or the chief or other head of a municipal police department of any city or city and county, upon proof that the person applying is of good moral character, that good cause exists for the issuance, and that the person applying is a resident of the county, *may issue* to such person a license to carry concealed a pistol, revolver, or other firearm *for any period of time not to exceed one year* from the date of the license, or in the case of a peace officer appointed pursuant to Section 830.6, three years from the date of the license. [¶] (b) A license may include any reasonable restrictions or conditions which the issuing authority deems warranted, including restrictions as to the time,

---

[1] Appellants and certain additional plaintiffs brought this action in Los Angeles Superior Court, alleging additional causes of action against the City of Los Angeles and two Los Angeles police officers. Those parties and causes of action are not involved in this appeal, which concerns only the Santa Clara County defendants.

place, and circumstances under which the person may carry a concealed firearm . . . ." (Italics added.)[2]

■ Penal Code section 12050 gives extremely broad discretion to the sheriff concerning the issuance of such licenses. (*Salute* v. *Pitchess* (1976) 61 Cal.App.3d 557, 560 [132 Cal.Rptr. 345].) In *CBS, Inc.* v. *Block* (1986) 42 Cal.3d 646, 655 [230 Cal.Rptr. 362, 725 P.2d 470], that discretion was described as "unfettered." The court noted that in Los Angeles County, with a population of over 7 million, the sheriff had issued only 35 licenses, while in Orange County, the sheriff had issued over 400. (*Id.* at pp. 649, 655.)

*Property Interest*

■ In light of this statute's delegation of such broad discretion to the sheriff, it is well established that an *applicant* for a license to carry a concealed firearm has no legitimate claim of entitlement to it under state law, and therefore has no "property" interest to be protected by the due process clause of the United States Constitution. (*Erdelyi* v. *O'Brien* (9th Cir. 1982) 680 F.2d 61, 63; *Guillory* v. *County of Orange* (9th Cir. 1984) 731 F.2d 1379, 1382-1383; see also *Fullman* v. *Graddick* (11th Cir. 1984) 739 F.2d 553, 561 [Alabama law]; *Ass'n of Orange County Deputy Sheriffs* v. *Gates* (9th Cir. 1983) 716 F.2d 733, 734 [retired peace officer's application pursuant to Pen. Code, § 12027]; *Conway* v. *King* (D.N.H. 1989) 718 F.Supp. 1059, 1061 [license to carry concealed weapon had by its terms expired; no property interest in renewal or new license].)

■ Appellants contend that because this case involves *revocation* of an existing license rather than application to acquire one, appellant Nichols had a property interest entitled to the protection of constitutional due process.[3] Contrary to appellants' suggestion, this conclusion does not necessarily follow. (*Brescia* v. *McGuire* (S.D.N.Y. 1981) 509 F.Supp. 243, 248 [license to carry concealed weapon revoked; federal civil rights action dismissed because no property interest shown under state law].) Not every right or benefit based on a statute constitutes property for purposes of the due process clause. It is necessary to analyze the nature of the right or benefit to determine if it constitutes a protectible property interest.

---

[2] The statute applies both to county sheriffs and chiefs of municipal police departments. This particular case involves a county sheriff, so for convenience we refer in this opinion to the sheriff.

[3] Appellants cite a case involving an application for a license to engage in the business of operating a greyhound racing track. The court held there was no property interest as to an applicant, but stated in dictum that "doubtless" once a license was granted, revocation would require notice and hearing. (*Medina* v. *Rudman* (lst Cir. 1976) 545 F.2d 244, 250.)

In *Board of Regents* v. *Roth* (1972) 408 U.S. 564, 577 [33 L.Ed. 548, 561, 92 S.Ct. 2701], the court stated, "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it. It is a purpose of the ancient institution of property to protect *those claims upon which people rely in their daily lives,* reliance that must not be arbitrarily undermined. It is a purpose of the constitutional right to a hearing to provide an opportunity for a person to vindicate those claims. [¶] Property interests, of course, are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." (Italics added.)

In *Beitzell* v. *Jeffrey* (1st Cir. 1981) 643 F.2d 870, 874, the court stated that procedural protections previously given to landowners have been "provided as well to many others *who depend heavily upon the continued availability* of, for example, welfare, social security, or government employment. [¶] The broadening of the term 'property' to include this 'new property', has required the courts to determine when an interest in a government benefit rises to the level of protected 'property'. The Supreme Court has made clear that the answer *depends in large part upon the extent to which a person has been made secure in the enjoyment of the benefit as a matter of substantive state or federal law.* [Citations.] *The greater the interest and protection accorded an interest by such substantive law, the more reasonable is the holder in expecting to continue to enjoy it and in making decisions in reliance upon that expectation,* and the less reasonable it is for the state to interfere directly with that enjoyment without according a fair opportunity to the holder to contest that interference." (Italics added; fns. omitted.)

In *Rios* v. *Cozens* (1972) 7 Cal.3d 792, 795 [103 Cal.Rptr. 299, 499 P.2d 979], vacated and remanded 410 U.S. 425 [35 L.Ed.2d 398, 93 S.Ct. 1019], reaffirmed (1973) 9 Cal.3d 454 [107 Cal.Rptr. 784, 509 P.2d 696], our Supreme Court referred to the constitutional right to due process in the deprivation of a "significant interest" or "vital personal and property rights."

The nature of a license to carry a concealed firearm pursuant to Penal Code section 12050 does not constitute a significant property right under the guidelines suggested by these cases.

The privilege to carry a concealed weapon on the person is certainly not property in the ordinary sense. It is not monetary, such as welfare or Social Security benefits (e.g., *Goldberg* v. *Kelly* (1970) 397 U.S. 254, 261-262 [25

L.Ed.2d 287, 295-296, 90 S.Ct. 1011]; *Mathews* v. *Eldridge* (1976) 424 U.S. 319, 332 [47 L.Ed.2d 18, 31-32, 96 S.Ct. 893]); it is not a government job (e.g., *Perry* v. *Sindermann* (1972) 408 U.S. 593, 597 [33 L.Ed.2d 570, 577-578, 92 S.Ct. 2694]); it is not a required license to practice a profession, occupation or business (e.g., *Willner* v. *Committee on Character* (1963) 373 U.S. 96, 103 [10 L.Ed.2d 224, 229, 83 S.Ct. 1175, 2 A.L.R.3d 1254]). Notwithstanding appellants' conclusory allegations that the privilege is essential to their business of weapons manufacturing, they point to no statute or regulation which makes it so. Appellants have not shown that they cannot practice this business without a license of this type. (See Pen. Code, §§ 12027, subd. (b) [exemption for possession or transportation by merchants of unloaded firearms as merchandise], 12026, 12026.2, subd. (a)(4), 12031, subd. (h) [exemptions for firearms at place of business].) In *Erdelyi* v. *O'Brien, supra,* 680 F.2d at pages 63-64, the court rejected the analogous contention that the privilege to carry a concealed weapon was essential to the occupation of private investigator. The court stated, "[I]t is undisputed that many people engage in the occupations of private investigator and criminal defense investigator without a concealed weapons license. Although Erdelyi might not be able to pursue her profession in precisely the way she would like, she has not been entirely, or even substantially, excluded."

Appellants cite *Bell* v. *Burson* (1971) 402 U.S. 535, 539 [29 L.Ed.2d 90, 94, 91 S.Ct. 1586] where the court held that a driver's license could not be suspended without due process, and stated "Once licenses are issued, as in petitioner's case, their continued possession may become essential in the pursuit of a livelihood. Suspension of issued licenses thus involves state action that adjudicates important interests of the licensees. In such cases the licenses are not to be taken away without that procedural due process required by the Fourteenth Amendment." This analogy to driver's licenses is unpersuasive. Driver's licenses are issued under statutory standards which are specific and certain. (See Veh. Code, §§ 12805, 12806.) Millions of people qualify for them and regard them as essential to the conduct of ordinary life. Licenses to carry a concealed firearm, however, are rarities. The statute leaves their issuance to the unfettered discretion of the sheriff, in the interest of controlling dangerous weapons. (*CBS, Inc.* v. *Block, supra,* 42 Cal.3d at p. 655.)

The short duration of a license to carry a concealed firearm further indicates its limited nature. The sheriff is authorized to issue the license for no more than one year. (Pen. Code, § 12050, subd. (a).) The holder has no legitimate claim under the statute of an entitlement to have the license renewed. (*Conway* v. *King, supra,* 718 F.Supp. at p. 1061; see *Board of Regents* v. *Roth, supra,* 408 U.S. at p. 578 [33 L.Ed.2d at pp. 561-562].) The

holder cannot develop a reasonable expectation that the privilege to carry a concealed firearm will continue.

Next, even when issued, the license may be extremely restricted. Subdivision (b) of Penal Code section 12050 authorizes the inclusion of "any reasonable restrictions or conditions which the issuing authority deems warranted." The sheriff's discretion to confine the license to extremely narrow conditions weighs against characterization of the license as a valuable property right.

Another factor to consider in determining whether a statutory right creates a property interest is the extent to which the statute restricts the discretion of the issuing authority to deny or revoke the right. Just as Penal Code section 12050 contains no meaningful restrictions on the sheriff's discretion to deny a license (*Erdelyi* v. *O'Brien, supra,* 680 F.2d at p. 63), it contains no express restrictions on the sheriff's discretion to revoke a license. As appellants point out, the statutory scheme does not even mention revocation. The power to license, however, implies the power to revoke. (*Stewart* v. *County of San Mateo* (1966) 246 Cal.App.2d 273, 283 [54 Cal.Rptr. 599]; *Yeoman* v. *Department of Motor Vehicles* (1969) 273 Cal.App.2d 71, 77 [78 Cal.Rptr. 251].) The fact the Legislature has not restricted the conditions under which a granted license may be revoked shows the Legislature intended the sheriff to have discretion. Under this construction of the statute, state law does not accord a license to carry a concealed firearm the level of security or durability which creates a property interest. (See *Beitzell* v. *Jeffrey, supra,* 643 F.2d at p. 874; *Baer* v. *City of Wauwatosa* (7th Cir. 1983) 716 F.2d 1117, 1122; *Reed* v. *Village of Shorewood* (7th Cir. 1983) 704 F.2d 943, 948.)

We conclude, therefore, that the limited nature of a license to carry a concealed firearm which has been issued under Penal Code section 12050 prevents characterizing it as a property right for purposes of constitutional due process.

### Liberty Interest

<span style="background:black"></span> "Liberty" as well as "property" is protected by the due process clause of the United States Constitution. If revocation of Nichols's license seriously damaged his reputation or imposed on him a stigma that foreclosed other employment opportunities, due process required giving him notice and an opportunity to be heard. (*Board of Regents* v. *Roth, supra,* 408 U.S. at p. 573 [33 L.Ed.2d at pp. 558-559].) Appellants contend a violation of Nichols's constitutional liberty interest is shown by the allegations that respondents revoked the license on the basis of false charges by Los Angeles police that Nichols displayed a poor attitude toward police

while under the influence of alcohol and in effect was not of good moral character.

This contention is misconceived because there is no allegation that these respondents, the Santa Clara defendants, communicated to anyone other than appellants the reasons the license was revoked. Since respondents did not make public the reasons, they did not damage Nichols's good name, reputation, honor or integrity. (*Bishop* v. *Wood* (1976) 426 U.S. 341, 348 [48 L.Ed.2d 684, 692, 96 S.Ct. 2074]; *Kraft* v. *Jacka* (9th Cir. 1989) 872 F.2d 862, 870; *Hayes* v. *Phoenix-Talent School Dist. No. 4* (9th Cir. 1990) 893 F.2d 235, 237.) The revocation did not by itself stigmatize Nichols. (*Erdelyi* v. *O'Brien, supra*, 680 F.2d at p. 63; *San Jose Police Officers Assn.* v. *City of San Jose* (1988) 199 Cal.App.3d 1471, 1481 [245 Cal.Rptr. 728].)

### State-law Causes of Action

Appellants' action was filed under the federal Civil Rights Act, 42 United States Code section 1983. As we have discussed, appellants failed to state a cause of action for violation of federal constitutional rights. Appellants suggest in the alternative that the pleadings be liberally construed to state a cause of action on several state-law theories. We find no merit to the asserted alternative theories.

### Due Process Under the California Constitution

 Appellants contend that even if the allegations are insufficient to show a "property" or "liberty" interest under the United States Constitution, they state a cause of action under the California Constitution. Appellants cite *People* v. *Ramirez* (1979) 25 Cal.3d 260, 264, 268 [158 Cal.Rptr. 316, 599 P.2d 622], where the California Supreme Court interpreted the California due process clause to include an individual's interest in freedom from arbitrary adjudicative procedures. The court stated, "[W]hen a person is deprived of a statutorily conferred benefit, due process analysis must start not with a judicial attempt to decide whether the statute has created an 'entitlement' that can be defined as 'liberty' or 'property,' but with an assessment of what procedural protections are constitutionally required in light of the governmental and private interests at stake." (*Id.* at p. 264.) For this purpose due process is a flexible concept calling for such procedural protections as the particular situation demands, balancing the interests in each context. (*Id.* at p. 268.) The court discussed four specific factors: (1) the private interest that will be affected by the official action, (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards, (3) the dignitary interest in informing individuals of the nature,

grounds and consequences of the action and in enabling them to present their side of the story to a responsible government official and (4) the governmental interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. (*Id.* at p. 269.)

■ Appellants contend that at least once the license was issued, it became a "statutorily conferred benefit" sufficient to trigger analysis under the California due process clause concerning its revocation. (See *San Jose Police Officers Assn.* v. *City of San Jose Assn., supra*, 199 Cal.App.3d at p. 1479.)

After careful consideration of the *Ramirez* factors and the pleadings in this case, we conclude appellants have failed to show a right under the California Constitution to a hearing on the license revocation.

As to factors (1) and (4), appellants' interest is small and the governmental interest is large. As discussed *ante*, the license was limited in time, not to exceed one year, as required by the statute.[4] Balanced against appellants' limited financial interest in practicing their business the particular way they want (*Erdelyi* v. *O'Brien, supra*, 680 F.2d at p. 63) is the government's vital public safety interest in controlling dangerous weapons, a highly regulated field. (*Ibid.*; *San Jose Police Officers Assn.* v. *City of San Jose, supra*, 199 Cal.App.3d at p. 1485.) The strong public safety interest also justified the immediate revocation without prior notice or opportunity to be heard. (See *Cafeteria Workers* v. *McElroy* (1961) 367 U.S. 886 [6 L.Ed.2d 1230, 81 S.Ct. 1743] [military security].)

Appellants contend that the sheriff was required at least to hold a post-deprivation hearing for Nichols "to present evidence on his behalf." This argument leads to consideration of *Ramirez* factor (2), the risk of an erroneous deprivation through the procedures used and the probable value, if any, of additional procedures, and factor (4), the fiscal and administrative burdens which additional procedures would impose. In this case the sheriff relied on a communication from another law enforcement agency, the Los Angeles police, concerning Nichols's arrest and behavior. This was a reasonable and presumably reliable basis for the sheriff's decision. It appears from the pleadings that Nichols desired a hearing in order to litigate the circumstances of his arrest.[5] Although it is conceivable such a hearing could

---

[4] The record does not reveal the term of Nichols's license or the time remaining when it was revoked.

[5] In one of the other causes of action involving the Los Angeles police defendants, Nichols alleged he was arrested without probable cause, assaulted, battered, falsely arrested, falsely imprisoned and subjected to physical, mental, and emotional abuse.

show the initial information was partially erroneous, we hold a hearing was not required in light of the balance of factors.[6] First, a sheriff's decision whether to revoke a license to carry a concealed firearm is highly discretionary and subjective; it does not necessarily turn on a showing of particular contestable facts, for which evidentiary procedures are best adapted. (*People v. Ramirez, supra,* 25 Cal.3d at pp. 273, 275; *San Jose Police Officers Assn. v. City of San Jose, supra,* 199 Cal.App.3d at pp. 1482-1483; *Cafeteria Workers v. McElroy, supra,* 367 U.S. at p. 888 [6 L.Ed.2d at p. 1232].) Second, to require the sheriff to conduct an evidentiary hearing on the circumstances of Nichols's arrest would impose fiscal and administrative burdens which would interfere with the efficiency of the sheriff's primary responsibilities of fighting crime. (See *San Jose Police Officers Assn.* v. *City of San Jose, supra,* 199 Cal.App.3d at pp. 1485-1486.)

As to factor (3), Nichols's dignitary interest in learning of the grounds for the decision and telling his side of the story, the pleading admits that respondents informed appellants of the grounds for the decision. Nichols has an opportunity to "tell his side of the story" in a written application for a new license (Pen. Code, § 12051), which in any event would be required upon expiration of the old.

Considering all the factors, we conclude the due process clause of the California Constitution did not require the sheriff to hold a hearing on revocation of Nichols's license to carry a concealed firearm.

### Failure to Exercise Discretion

■ Citing *Salute* v. *Pitchess, supra,* 61 Cal.App.3d 557, appellants contend respondents wrongfully "refused to exercise their discretion." In *Salute,* it was admitted that the sheriff had a fixed policy of not granting applications under Penal Code section 12050. The court held that a writ of mandate would lie to compel the sheriff to exercise discretion on an individual basis on every application under Penal Code section 12050. (*Id.* at pp. 560-561.)

Appellants' reliance on *Salute* is misplaced. Appellants' theory is that "by not making an investigation" and "by not conducting an inquiry" or hearing, respondents failed and refused to exercise discretion. This argument is contradicted by the pleading, which clearly alleges that respondents

---

[6] In *Mackey* v. *Montrym* (1979) 443 U.S. 1, 13 [61 L.Ed.2d 321, 331, 99 S.Ct. 2612], the court stated, "[T]he Due Process Clause has never been construed to require that the procedures used to guard against an erroneous deprivation of a protectible 'property' or 'liberty' interest be so comprehensive as to preclude any possibility of error. The Due Process Clause simply does not mandate that all governmental decisionmaking comply with standards that assure perfect, error-free determinations."

relied upon information from the Los Angeles police concerning Nichols's individual circumstances. Respondents obviously exercised their discretion based on that information, and, as we have discussed, respondents were not required by due process to conduct a further hearing.

### Declaratory Relief

Finally, a separate cause of action labeled "Declaratory Relief" requested a declaration "that the revocation of plaintiff Robert Nichols' license to carry a concealed weapon is a nullity, or in the alternative, that said revocation be stayed pending a full and fair hearing." This opinion can serve as a declaration (*Newby* v. *Alto Rivera Apartments* (1976) 60 Cal.App.3d 288, 304 [131 Cal.Rptr. 547]) that Nichols is not entitled to any such relief.

The order of dismissal is affirmed.

Boren, J., and Turner, J., concurred.