Filed 11/1/23  P. v. Howard CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

|  |  |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>PEDRO JAVELLE HOWARD,<br><br>    Defendant and Respondent. | C097220<br><br>(Super. Ct. No. 21FE008024) |

Finding that the firearm licensing scheme embodied in Penal Code section 26150[1] violates the Second Amendment of the United States Constitution, the trial court sustained defendant Pedro Javelle Howard's demurrer and dismissed a charge of carrying a loaded firearm in public, prohibited under section 25850.  Upon consideration of the People's appeal, we reverse the judgment and order dismissing the charge and remand the

---

[1]    Undesignated statutory references are to the Penal Code.

1

matter with direction to the trial court to vacate the order sustaining defendant's demurrer, enter a new order overruling the demurrer, and reinstate the charge.

## SECOND AMENDMENT PRECEDENT

The Second Amendment provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." (U.S. Const., 2d Amend.) This verbiage has fueled copious debate surrounding the nature and holders of this right. Over the last 15 years, the United States Supreme Court has interpreted this right, at its core, to provide law-abiding, responsible citizens the right to carry a handgun at home and in public for the central purpose of self-defense — subject to limitations. Three cases demonstrate the evolution of the essence of this right.

In *District of Columbia v. Heller* (2008) 554 U.S. 570 (*Heller*), the United States Supreme Court struck down laws in the District of Columbia that banned the possession of operable handguns inside the home. (*Id.* at p. 635.) The court held that the Second Amendment confers "an individual right to keep and bear arms" (*Heller*, at p. 595) for the "core lawful purpose of self-defense" (*id.* at p. 630), which the court identified as being "central to the Second Amendment right" (*id.* at p. 628). The court concluded that the District of Columbia's ban on possessing operable weapons in the home violated the Second Amendment's guarantee of "the right of law-abiding, responsible citizens to use arms in defense of hearth and home." (*Heller*, at p. 635.) Accordingly, the court concluded that "[a]ssuming that [the plaintiff] is not disqualified from the exercise of Second Amendment rights, the District must permit him to register his handgun and must issue him a license to carry it in the home." (*Ibid.*)

*Heller* explained, however, that "the Second Amendment is not unlimited" and is "not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." (*Heller, supra*, 554 U.S. at p. 626.) The court cautioned that "nothing" in its opinion "should be taken to cast doubt on longstanding prohibitions on

2

the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms." (*Id.* at pp. 626-627.) The court also noted that its list of "presumptively lawful regulatory measures" was merely illustrative, not exhaustive. (*Id.* at p. 627, fn. 26.)

Two years later, in *McDonald v. Chicago* (2010) 561 U.S. 742 (*McDonald*), the court held that the Second Amendment "right to keep and bear arms for self-defense," particularly handguns, applies to the states through the Fourteenth Amendment. (*McDonald*, at pp. 789, 791.) The court struck down local laws similar to the ones stricken in *Heller*. (*Id.* at p. 750.)

Last year, in *N.Y. State Rifle & Pistol Assn, Inc. v. Bruen* (2022) 597 U.S. ___ [142 S.Ct. 2111] (*Bruen*), the court held the Second Amendment right, recognized in *Heller* and *McDonald*, of "an ordinary, law-abiding citizen to possess a handgun in the home for self-defense" must be generally extended to public areas. (*Id.* at p. ___ [142 S.Ct. at p. 2122].) New York state's licensing scheme challenged in *Bruen*, required that, to obtain a license to carry a weapon outside of the home, an individual had to show that " 'proper cause' " existed to issue such license, i.e., a particularized need for self-defense beyond that of the general public. (*Id.* at p. ___ [142 S.Ct. at p. 2123].) A licensing officer had the discretion to deny licenses based on a perceived lack of need or suitability. (*Ibid.*) In light of the recognition of the Second Amendment right to possess a handgun outside the home for self-defense purposes, the *Bruen* court determined that the burden then fell on the respondents to show that New York's restriction of that right through the proper-cause requirement was consistent with the nation's historical tradition of firearm regulation. (*Id.* at p. ___ [142 S.Ct. at p. 2135].)

The *Bruen* court found no evidence of a historical tradition of conditioning the constitutional right to bear arms upon an individual's demonstration of a special need to exercise that right and concluded that New York's proper-cause requirement violates the

3

Second Amendment, applicable to the states through the Fourteenth Amendment, "in that it prevents law-abiding citizens with ordinary self-defense needs from exercising their right to keep and bear arms." (*Bruen, supra*, 597 U.S. at p. ___ [142 S.Ct. at p. 2156].)

The *Bruen* court called out six other jurisdictions, including California, which have laws similar to New York in that they require a " 'good' " or " 'proper' " cause for being armed. (*Bruen, supra*, 597 U.S. at p. ___, fn. 2 [142 S.Ct. at p. 2124, fn. 2].) The court labeled these as " 'may issue' " licensing schemes because, it opined, "authorities have discretion to deny . . . licenses even when the applicant satisfies the statutory criteria, usually because the applicant has not demonstrated cause or suitability for the relevant license." (*Id.* at p. ___ [142 S.Ct. at p. 2124].) By contrast, *Bruen* identified 43 states having " 'shall issue' " licensing schemes, in which a license must be issued when an individual satisfies certain objective requirements. (*Id.* at p. ___ [142 S.Ct. at p. 2123].)

## FACTUAL AND PROCEDURAL BACKGROUND

In May 2021, the prosecutor in Sacramento County charged defendant with carrying a loaded firearm on his person or in a vehicle in violation of section 25850, subdivision (a) and further alleged that defendant was not listed with the Department of Justice as the registered owner of the firearm (§ 25850, subd. (c)(6)).

In August 2022, prior to the preliminary hearing, defendant demurred[2] and argued the charge was unconstitutional under *Bruen, supra*, 597 U.S. ___ [142 S.Ct. 2111]. Defendant contended the only way an ordinary citizen could avoid criminal liability for carrying a loaded firearm in public for the general purpose of self-defense is if they obtain a concealed carry weapons permit under section 26150 et seq. (See § 26010

---

[2]    Defendant titled his motion as pursuant to section 995, but relied upon section 1004, subdivision (a)(4) to argue the facts did not constitute a public offense as grounds for the demurrer. The parties treated the motion as a demurrer.

4

["Section 25850 does not apply to the carrying of any handgun by any person as authorized pursuant to Chapter 4 (commencing with Section 26150) of Division 5"].) Yet, defendant argued, California's licensing scheme is nearly identical to the New York licensing scheme the United States Supreme Court held to be unconstitutional in *Bruen*. According to defendant, as a result of *Bruen*, California's entire firearm licensing scheme is invalid because it is based on impermissible subjective criteria such as "good moral character" and "good" or "proper cause" and because it provides that the issuing authority "may issue" a license upon such a showing. Because California has not defined "good moral character" or "good cause," this scheme does not contain clear criteria for issuing licenses and instead allows the local law enforcement executive "near unbridled discretion" to implement definitions of his or her own. He claimed that "the statute cannot be divorced from the unconstitutional provision and still have independent enforcement" because it is constitutionally offensive in three ways: (1) it is a "may issue" scheme; (2) the "good moral character" is a standard far too loosely defined; and (3) the "good cause" requirement is improper. He argued that if each offensive portion of the statute was stricken, it would render the statute incomprehensible. He requested the court dismiss the action because it lacked jurisdiction to proceed to trial under a facially unconstitutional statute. Defendant further claimed case law governing standing in First Amendment jurisprudence extends to afford him standing here, arguing a "person faced with an unconstitutional licensing law may ignore it and engage with impunity in the exercise of the right of free expression for which [t]he law purports to require a license. Where that person does so, the law will not preclude constitutional attack because the defendant merely did not apply for a permit." He also claimed that because he faced imminent criminal prosecution, he has suffered harm sufficient to provide him with standing to mount this challenge.

The prosecution challenged defendant's standing, arguing there was no evidence he ever applied for a license under the statutes. The prosecution also presented evidence

5

that Sacramento County defined "good moral character" based on criminal history. Similarly, Sacramento County did not define "good cause" offensively under *Bruen*; "good cause" was satisfied if the applicant desired the license for purposes of self-defense. Nevertheless, the prosecution contended that, at most, the holding in *Bruen* invalidated only the "good cause" requirement and severing that requirement from the statutes was possible, thereby rendering the statutes constitutionally valid.

The trial court agreed with defendant. Citing to *Shuttlesworth v. Birmingham* (1969) 394 U.S. 147 and *Aaron v. Municipal Court* (1977) 73 Cal.App.3d 596, the trial court concluded defendant need not attempt to comply with the unconstitutional licensing requirement in order to have standing to challenge the statute in the instant case.

Additionally, the trial court found that *Bruen* invalidated "may issue" licensing schemes entirely and, because California is a "may issue" state, *Bruen* invalidated the entirety of section 26150. Thus, the court reasoned, even if the "good cause" requirement could be severed, the statute remains unconstitutional because the "issuance of a license would improperly depend on the licensing authority's unbridled discretion."

The court went on to find that the invalidation of the licensing scheme "has a substantial effect on section 25850" because the validity of the latter necessarily depended on the validity of the former. The trial court reasoned that section 25850 represented a total ban on the ability to carry a loaded firearm in public, subject to exemptions. The exemption available to an ordinary citizen resides in the licensing scheme, which is no longer a constitutional option. As such, section 25850 deprives ordinary citizens of their right under the Second Amendment to carry a firearm in public.

The trial court sustained the demurrer, dismissed the charge, and entered judgment for defendant. The People filed a notice of appeal. (§ 1238.)

## DISCUSSION

The People contend that the trial court erred in finding defendant has standing to challenge the constitutionality of the relevant statutes because he did not apply for a

6

license and therefore was not harmed by the alleged unconstitutional nature of the statutes. The People also argue that while *Bruen* struck down the "good cause" requirement in the licensing statute, this requirement may be severed from the statute such that the scheme remains valid. Indeed, the People note, the day after *Bruen* was decided, the Attorney General prohibited use of that criterion in the licensing approval process. Finally, the People argue that the remaining public carry license requirements pass constitutional muster under *Bruen* and the trial court's ruling to the contrary was based on an overly broad interpretation of *Bruen*.

Because this court and the Central California Appellate Project were unable to contact defendant, he is not represented by counsel in this appeal and did not file a respondent's brief. In these circumstances, we may decide the appeal on the record, the opening brief, and any oral argument by the appellant. (Cal. Rules of Court, rule 8.360(c)(5)(B).) Nevertheless, the appellant "still bears the 'affirmative burden to show error whether or not the respondent's brief has been filed.' " (*Smith v. Smith* (2012) 208 Cal.App.4th 1074, 1078.)

"A defendant in a criminal case may demur to a charging document on several grounds, including the absence of 'jurisdiction of the offense charged therein' and any 'legal bar to the prosecution.' (§ 1004, subds. (1) & (5).)" (*People v. Castel* (2017) 12 Cal.App.5th 1321, 1325.) "It is well settled that a court is without jurisdiction to subject a citizen to criminal prosecution for violation of an unconstitutional statute . . . . [Citations.] . . . The sole method available for launching such a challenge prior to trial is by a demurrer (Pen. Code, §§ 1002-1004), which reaches only defects appearing on the face of the accusatory pleading. (Pen. Code, § 1004.)" (*In re Berry* (1968) 68 Cal.2d 137, 145-146, fn. omitted.)

As we are reviewing the sustaining of demurrer based on the unconstitutionality of statutes, and as standing is a purely legal question, we review every issue de novo. (*Stonehouse Homes LLC v. City of Sierra Madre* (2008) 167 Cal.App.4th 531, 539

7

[demurrer]; *People v. Sanchez* (2017) 18 Cal.App.5th 727, 734 [dismissal of charges based on constitutional questions]; *San Luis Rey Racing, Inc. v. California Horse Racing Bd.* (2017) 15 Cal.App.5th 67, 73 [standing].)  We treat the demurrer as admitting all material facts properly pleaded and matters subject to judicial notice, but not deductions, contentions, or conclusions of law or fact.  (*Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1126.)

A.  Standing

Before the trial court, defendant did not specify whether his claims related solely to the facial validity of sections 25850 and 26150, or the statutes' validity as applied to the particular circumstances of his case.  At the very least it appears defendant invited the trial court to view the issue as a facial challenge to the statute[s].  "The rule is well established . . . that one will not be heard to attack a statute on grounds that are not shown to be applicable to himself and that a court will not consider every conceivable situation which might arise under the language of the statute and will not consider the question of constitutionality with reference to hypothetical situations."  (*In re Cregler* (1961) 56 Cal.2d 308, 313.)

An "as applied" challenge to a statute seeks "relief from a specific application of a facially valid statute . . . to an individual or class of individuals who are under allegedly impermissible present restraint . . . as a result of the manner . . . in which the statute . . . has been applied."  (*Tobe v. City of Santa Ana* (1995) 9 Cal.4th 1069, 1084.)  Such a challenge "contemplates analysis of the facts of a particular case . . . to determine the circumstances in which the statute . . . has been applied and to consider whether . . . the application deprived the individual to whom it was applied of a protected right. [Citations.]" (*Ibid.*)

The People argue that defendant does not have standing to challenge the statute where there is no indication that he ever applied for a license or was thwarted in an effort to do so.  Generally, " ' "[o]ne who seeks to raise a constitutional question must show

8

that his rights are affected injuriously by the law which he attacks and that he is actually aggrieved by its operation." [Citation.]' [Citation.]" (*People v. Conley* (2004) 116 Cal.App.4th 566, 576; see also *People v. Perry* (1931) 212 Cal. 186, 193 ["It is incumbent upon a party to an action or proceeding who assails a law invoked in the course thereof to show that the provisions of the statute thus assailed are applicable to him and that he is injuriously affected thereby"]; *U.S. v. Decastro* (2d Cir. 2012) 682 F.3d 160, 164 [" 'As a general matter, to establish standing to challenge an allegedly unconstitutional policy, a plaintiff must submit to the challenged policy' "].)

Because we view defendant's challenge as a *facial* challenge to the constitutionality of a criminal statute under which he is subject to prosecution, we disagree that he lacks standing. "[I]n some cases, a defendant may make a facial challenge to the statute, if he argues that the statute improperly prohibits a ' "substantial amount of constitutionally protected conduct," ' whether or not its application to his own conduct may be constitutional. (*Kolender v. Lawson* (1983) 461 U.S. 352, 358-359, fn. 8.)" (*Tobe v. City of Santa Ana, supra*, 9 Cal.4th at p. 1095.) "A facial challenge is really just a claim that the law or policy at issue is unconstitutional in all its applications." (*Bucklew v. Precythe* (2019) 587 U.S. ___, ___ [139 S.Ct. 1112, 1127].) We agree with other California courts that have recently allowed for facial challenges to gun regulations based on *Bruen*. (See, e.g., *In re T.F.-G.* (2023) 94 Cal.App.5th 893, 912 ["Because T.F.-G. challenges the constitutionality of section 25850 on its face and not as applied to him, . . . [h]e need not demonstrate that the hypothetical denial of a license — had he applied for one — would have offended the Second Amendment"], petn. for review pending, petn. filed Oct. 3, 2023; *In re D.L.* (2023) 93 Cal.App.5th 144, 156 ["We disagree with the Attorney General and conclude that D.L. has standing here because he is challenging the *facial* constitutionality of a criminal statute under which he has been convicted"].)

At oral argument, the People argued an additional challenge to standing, that unlike the defendants in *In re T.F.-G.*, and *In re D.L.*, the defendant here has not yet

9

suffered an injury by way of conviction. We find that fact a distinction without a difference and disagree that a conviction is a prerequisite to a challenge to the constitutionality of a statute when, as here, a demurrer was available. Defendant was accused of violating section 25850, subdivision (a). As defendant noted before the trial court, it is well settled that a court is without jurisdiction to subject a person to criminal prosecution for violation of an unconstitutional statute and this issue may be raised prior to trial in a demurrer. (*In re Berry, supra*, 68 Cal.2d at p. 145.) Thus, "[t]he question of the validity of the statute, upon which the prosecution is based, is necessarily presented." (*Smith v. Cahoon* (1931) 283 U.S. 553, 562.) A demurrer raises a question of law; our review of a ruling on a demurrer based on the constitutional invalidity of a statute is necessarily limited to deciding whether the statute is unconstitutional *on its face*. (*Guevara v. Superior Court* (1998) 62 Cal.App.4th 864, 871; see also *Tobe v. City of Santa Ana, supra*, 9 Cal.4th at p. 1090 ["A demurrer to a criminal complaint lies only to challenge the sufficiency of the pleading and raises only issues of law"].) We conclude that defendant has standing to challenge the facial constitutionality of a criminal statute under which he has been charged. This necessarily extends to his challenge to the facial validity of California's licensing scheme to the extent that it implicates the constitutionality of section 25850.

B. The *Bruen* Decision

Under New York's licensing scheme, an applicant who sought to possess a firearm at home or in his or her place of business "must convince a 'licensing officer' — usually a judge or law enforcement officer — that, among other things, he is of good moral character, has no history of crime or mental illness, and that 'no good cause exists for the denial of the license.' [Citation.]" (*Bruen, supra*, 597 U.S. at p. ___ [142 S.Ct. at pp. 2122-2123].) To secure an unrestricted license to carry a firearm *outside* their home or place of business for purposes of self-defense, an applicant pre-*Bruen* had to prove the existence of " 'proper cause' " to do so. (*Id.* at p. ___ [142 S.Ct. at p. 2123].) The phrase

10

"proper cause" had been construed by the state courts to require the applicant to

" 'demonstrate a special need for self-protection distinguishable from that of the general community.' [Citation.]" (*Ibid*.) This was generally established by "evidence 'of particular threats, attacks or other extraordinary danger to personal safety.' [Citations.]" (*Ibid*.)

Two law-abiding residents of New York applied for unrestricted licenses to carry handguns in public for general self-defense purposes. Their requests were denied for failure to satisfy the "proper cause" requirement. (*Bruen, supra*, 597 U.S. at p. ___ [142 S.Ct. at pp. 2124-2125].) They sued for declaratory and injunctive relief, alleging that state licensing officials "violated their Second and Fourteenth Amendment rights by denying their unrestricted-license applications on the basis that they had failed to show 'proper cause,' i.e., had failed to demonstrate a unique need for self-defense." (*Id*. at p. ___ [142 S.Ct.at p. 2125], italics omitted.) The federal district court dismissed the complaint and the Second Circuit Court of Appeals affirmed. (*Ibid*.)

The United States Supreme Court reversed the Second Circuit's judgment, concluding that there is no identified tradition justifying the proper-cause requirement as American governments have not historically "required law-abiding, responsible citizens to 'demonstrate a special need for self-protection distinguishable from that of the general community' in order to carry arms in public. [Citation.]" (*Bruen, supra*, 597 U.S. at p. ___ [142 S.Ct. at p. 2156].) The court held that "New York's proper-cause requirement violates the Fourteenth Amendment in that it prevents law-abiding citizens with ordinary self-defense needs from exercising their right to keep and bear arms." (*Ibid*.)

The high court rejected a two-step test courts of appeal developed to assess Second Amendment claims, which included a test for how well the challenged regulation fit the historical understanding of the right, coupled with a means-end scrutiny in which courts analyzed " 'how close the law comes to the core of the Second Amendment right

and the severity of the law's burden on that right.' [Citation.]" (*Bruen, supra*, 597 U.S. at p. ___ [142 S.Ct. at p. 2126].)  The court noted that its own precedent solely relied upon constitutional text and history in "defining the character of the right (individual or militia dependent), suggesting the outer limits of the right, or assessing the constitutionality of a particular regulation." (*Id*. at p. ___ [142 S.Ct. at p. 2129]; see, e.g., *Heller, supra*, 554 U.S. at p. 629.)

Instead, the court established and applied the following "text-and-history standard" (*Bruen, supra*, 597 U.S. at p. ___ [142 S.Ct. at p 2138]):  "When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct.  The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation.  Only then may a court conclude that the individual's conduct falls outside the Second Amendment's 'unqualified command.' [Citation.]" (*Id*. at p. ___ [142 S.Ct. at pp. 2129-2130].)  Essentially, "the government must affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." (*Id.* at p. ___ [142 S.Ct. at p. 2127].)

This historical inquiry "will often involve reasoning by analogy" to determine whether a modern firearm regulation is " 'relevantly similar' " to a historical one by examining two metrics:  "how and why the regulations burden a law-abiding citizen's right to armed self-defense." (*Bruen, supra*, 597 U.S. at p. ___, ___ [142 S.Ct. at pp. 2132, 2133].)  In short, "whether modern and historical regulations impose a comparable burden on the right of armed self-defense and whether that burden is comparably justified are ' "*central*" ' considerations when engaging in an analogical inquiry." (*Id*. at p. ___ [142 S.Ct. at p. 2133].)  Analogical reasoning "is neither a regulatory straitjacket nor a regulatory blank check. . . .  [Citation.]  . . . [It] requires only that the government identify a well-established and representative historical *analogue*, not a historical *twin*.  So even if a modern-day regulation is not a dead ringer

12

for historical precursors, it still may be analogous enough to pass constitutional muster." (*Ibid.*)

Applying the test to New York's statute, the court concluded that because (1) "[t]he Second Amendment's plain text . . . presumptively guarantees petitioners . . . a right to 'bear' arms in public for self-defense" (*Bruen, supra*, 597 U.S. at p. ___ [142 S.Ct at p. 2135]) and (2) "the historical record . . . does not demonstrate a tradition of broadly prohibiting the public carry of commonly used firearms for self-defense" or "any . . . tradition limiting public carry only to those law-abiding citizens who demonstrate a special need for self-defense," the proper-cause requirement is unconstitutional. (*Id*. at p. ___ [142 S.Ct. at p. 2138].)

Although not the basis of its ruling, *Bruen* generally contrasted New York's permissive " 'may issue' " concealed carry licensing regime (*Bruen, supra*, 597 U.S. at p. ___ [142 S.Ct. at p. 2124]) with " 'shall issue' jurisdictions, where authorities must issue concealed-carry licenses whenever applicants satisfy certain threshold requirements, without granting licensing officials discretion to deny licenses based on a perceived lack of need or suitability" (*id*. at p. ___ [142 S.Ct. at p. 2123]). The court stated, "only six States and the District of Columbia have 'may issue' licensing laws, under which authorities have discretion to deny concealed-carry licenses even when the applicant satisfies the statutory criteria, usually because the applicant has not demonstrated cause or suitability for the relevant license. Aside from New York, then, only California [and five other jurisdictions] have analogues to the 'proper cause' standard." (*Id*. at p. ___ [142 S.Ct. at p. 2124]; see *id*. at p. ___, fn. 2 [142 S.Ct. at p. 2124, fn. 2] [citing "§ 26150 (West 2021) ('Good cause')"].) In a separate footnote, the high court stated that "nothing in [its] analysis should be interpreted to suggest the unconstitutionality of the 43 States' 'shall-issue' licensing regimes, under which 'a general desire for self-defense is sufficient to obtain a [permit].' [Citation.]" (*Bruen*, at p. ___, fn. 9 [142 S.Ct. at p. 2138, fn. 9].) It emphasized that "[b]ecause these licensing

13

regimes do not require applicants to show an atypical need for armed self-defense, they do not necessarily prevent 'law-abiding, responsible citizens' from exercising their Second Amendment right to public carry. [Citation.] Rather, it appears that these shall-issue regimes, which often require applicants to undergo a background check or pass a firearms safety course, are designed to ensure only that those bearing arms in the jurisdiction are, in fact, 'law-abiding, responsible citizens.' [Citation.] And they likewise appear to contain only 'narrow, objective, and definite standards' guiding licensing officials, [citation], rather than requiring the 'appraisal of facts, the exercise of judgment, and the formation of an opinion,' [citation] — features that typify proper-cause standards like New York's." (*Ibid*.)

C. California's Firearm Licensing Scheme

In California, "[a] person is guilty of carrying a loaded firearm when the person carries a loaded firearm on the person or in a vehicle while in any public place or on any public street in an incorporated city or in any public place or on any public street in a prohibited area of unincorporated territory." (§ 25850, subd. (a).) "Carrying a loaded firearm in violation of this section is punishable, as follows: [¶] . . . [¶] . . . Where the person is not listed with the Department of Justice pursuant to Section 11106 as the registered owner of the handgun, by imprisonment pursuant to subdivision (h) of Section 1170, or by imprisonment in a county jail not to exceed one year, or by a fine not to exceed one thousand dollars ($1,000), or both that fine and imprisonment." (§25850, subd. (c)(6).) "Section 25850 does not apply to the carrying of any handgun by any person as authorized pursuant to Chapter 4 (commencing with Section 26150) of Division 5." (§ 26010.)

Section 26150, subdivision (a) states: "When a person applies for a license to carry a pistol, revolver, or other firearm capable of being concealed upon the person, the sheriff of a county may issue a license to that person upon proof of all of the following:

"(1) The applicant is of good moral character.

14

"(2) Good cause exists for issuance of the license.

"(3) The applicant is a resident of the county or a city within the county, or the applicant's principal place of employment or business is in the county or a city within the county and the applicant spends a substantial period of time in that place of employment or business.

"(4) The applicant has completed a course of training as described in Section 26165."[3]

D.  Applying *Bruen*

At oral argument, the People argued that *People v. Miller* (2023) 94 Cal.App.5th 935 provides the necessary analysis to resolve the instant case.[4]  In *Miller*, a different panel of this court considered the defendant's argument that the charges against her for violating California's prohibition against concealed carry (§ 25400) were unconstitutional under *Bruen*.  (*Miller*, at p. 943.)  That panel concluded that the constitutionality arguments in *Bruen* did not assist the defendant as "the post-*Heller* opinions upholding the constitutionality of section 25400 were not abrogated by *Bruen*.  This is because they were already based on the understanding that prohibitions on concealed firearms have

---

[3]     Section 26150 applies to sheriffs.  Section 26155, applicable to chiefs of police, similarly states that the licensing authority "may issue a license" to a person applying for a "license to carry a pistol, revolver, or other firearm capable of being concealed upon the person," upon proof of the same requirements of (1) good moral character; (2) good cause for the issuance of the license; and (3) completion of a firearms training course. The statute also has a residency requirement similar to that in section 26150, subdivision (a)(3).

[4]     The People failed to comply with California Rules of Court, rule 8.254, which mandates informing the court of new authority via letter prior to relying on the authority. While it is our prerogative to refuse to consider this authority, we instead find it distinguishable.

historically been permitted by the Second Amendment. [Citations.]" (*Id*. at pp. 945-946.)

We do not find *Miller* to be instructive in this case. As the panel in *Miller* recognized, a prohibition against concealed carry is different than a prohibition against open carry. (See *People v. Miller, supra*, 94 Cal.App.5th at p. 946, citing *Bruen, supra*, 597 U.S. at p. ___ [142 S.Ct. at p. 2147] [noting that *Bruen* explained that, to the extent a statute that prohibited concealed carry also prohibited open carry, it was the open carry provision that conflicted with the Constitution and was void].) Accordingly, we look for guidance from cases involving a constitutional challenge to section 25850. (See e.g., *In re D.L., supra*, 93 Cal.App.5th at p. 165; *In re T.F.-G., supra*, 94 Cal.App.5th at p. 899, petn. for review pending.)

1. *The "good moral character" requirement*

In the trial court, defendant contended that the "good moral character" requirement is identical to the requirement in New York's scheme and, because the Supreme Court invalidated the New York scheme, California's "good moral character" requirement must follow suit. We disagree. Nothing in *Bruen* suggests that the invalidation of the licensing scheme was premised at all on New York's "good moral character" requirement. (*In re D.L., supra*, 93 Cal.App.5th at p. 166.) Indeed, the *Bruen* majority only mentioned "good moral character" twice, in passing. (*Bruen, supra*, 597 U.S. at p. ___ [142 S.Ct. at pp. 2122-2123].)

2. *The scope of Bruen as applied to "may issue" licensing schemes*.

In his demurrer, defendant argued that *Bruen* invalidated California's entire licensing scheme because California is a "may issue" state and the Supreme Court invalidated "may issue" licensing schemes entirely. The basis for this conclusion rests in the high court's comments regarding California's status as a "may issue" state with a

16

requirement of "good cause" analogous to New York's "proper cause" requirement. (*Bruen, supra*, 597 U.S. at p. ___, fn. 2 [142 S.Ct. at p. 2124, fn. 2].)

We disagree with this interpretation. Although the court categorized California, New York and five other jurisdictions as "may issue" states, the invalidation of New York's statute was based on its requirement that an applicant demonstrate "proper cause" to have and carry a firearm outside of the home and was not invalidated based on the use of the term "may issue." While *Bruen* may have cautioned those jurisdictions, it made no mention of — let alone relied upon — the presence of the term "may issue" or any similar language in the challenged New York statute. No such wording is apparent from the New York statute. (See N.Y. Penal Law former § 400.00(2) (2021) ["A license for a pistol or revolver, other than an assault weapon or a disguised gun, *shall be* issued to . . . (f) have and carry concealed, without regard to employment or place of possession, by any person when proper cause exists for the issuance thereof . . . ." (Italics added)].) Moreover, while the high court stated in a footnote that its holding should not be construed to render unconstitutional the "shall issue" licensing schemes, nowhere does it indicate that its holding should be construed to invalidate all "may issue" licensing schemes entirely. (*Bruen, supra*, 597 U.S. at p. ___, fn. 9 [142 S.Ct. at p. 2138, fn. 9].)

Although the high court expressed concern with open-ended discretion of licensing officials, the thrust of *Bruen*'s concern focused on New York's scheme that allowed licensing officials to subjectively assess the applicant's special need for self-defense, infringing on the very right guaranteed by the Second Amendment. (See *Bruen, supra*, 597 U.S. at p. ___ [142 S.Ct. at p. 2123] [contrasting "shall issue" jurisdictions, where authorities must issue concealed-carry licenses upon satisfaction of stated requirements, without granting licensing officials discretion to deny licenses based on a perceived lack of need or suitability, with New York's "may issue" scheme]; *id*. at p. ___ [142 S.Ct. at p. 2138] [concluding no historical tradition of limiting public carry only to those law-abiding citizens who demonstrate a special need for self-defense]; *id.* at p. ___

17

[142 S.Ct. at p. 2156] [declaring the right to bear arms in public for self-defense is not a " 'second-class right' "; "[w]e know of no other constitutional right that an individual may exercise only after demonstrating to government officers some special need"].)

Further support for this conclusion is found in the high court's discussion of the "shall issue" statutes.  The court recognized that three states — Connecticut, Delaware, and Rhode Island — have discretionary criteria.  (*Bruen, supra*, 597 U.S. at p. ___, fn. 1 [142 S.Ct. at p. 2123, fn. 1], citing Conn. Gen. Stat. § 29-28(b) (2021), Del. Code, Tit. 11, § 1441 (2022), & R.I. Gen. Laws § 11-47-11 (2002).)  However, the court concluded these statutes "appear to operate like 'shall issue' jurisdictions" where, in part, Connecticut and Rhode Island provide officials discretion to deny a concealed-carry permit to anyone who is not a " 'suitable person,' " which is decidedly different than requiring a special need to public carry.  (*Bruen*, at p. ___, fn. 1 [142 S.Ct. at p. 2123, fn. 1], citing *Dwyer v. Farrell* (1984) 193 Conn. 7, 12 [475 A.2d 257, 260] ["the 'suitable person' standard precludes permits only to those 'individuals whose conduct has shown them to be lacking the essential character of temperament necessary to be entrusted with a weapon' "]; *Gadomski v. Tavares* (2015) 113 A.3d 387, 392 ["the Rhode Island Supreme Court has flatly denied that the '[d]emonstration of a proper showing of need' is a component of that [suitability] requirement"].)  Thus, it is not the use of the term "may issue" the court found unconstitutional.  Nor is a discretionary component of the licensing scheme necessarily objectionable.  Rather, it is clear the *Bruen* court invalidated New York's "proper cause" requirement because it was interpreted to require an applicant show more than an ordinary need for self-defense as justification for permission to publicly carry and granted the licensing authority discretion to judge the worthiness of that justification.  (Cf. *Bruen*, at p. ___ [142 S.Ct. at p. 2157] (conc. opn. of Alito, J.) ["today's decision therefore holds that a State may not enforce a law, like New York's . . . , that effectively prevents its law-abiding residents from carrying a gun for this purpose.  [¶]  That is all we decide"].)

18

*3.    "Good cause" requirement*

However, *Bruen* deemed the "good cause" provision in California's licensing statutes (§§ 26150, subd. (a), 26155, subd. (a)) to be equivalent to New York's invalid "proper cause" standard.  (*Bruen, supra*, 597 U.S. at p. ___ [142 S.Ct. at pp. 2123-2124].)  The People concede the "good cause" provision is unconstitutional and note that the day after the opinion in *Bruen* was issued, the Attorney General issued a statement:  "[T]he [*Bruen*] decision makes clear that 'good cause' requirements such as those in California Penal Code sections 26150(a)(2) and 26155(a)(2) are inconsistent with the Second and Fourteenth Amendments. . . .  [¶]  In accordance with *Bruen*, the Attorney General now considers the 'good cause' requirements set forth in California Penal Code sections 26150(a)(2) and 26155(a)(2) to be unconstitutional and unenforceable. . . ."  (Off. of the Atty. Gen., Legal Alert No. OAG-2022-02, U.S. Supreme Court Decision in *New York State Rifle & Pistol Association v. Bruen*, No. 20-843 (June 24, 2022) <https://oag.ca.gov/system/files/media/legal-alert-oag-2022-02.pdf>, pp. 1-2 [as of Nov. 1, 2023], archived at <https://perma.cc/KA6D-4HEY>.][5]  The Attorney General directed that issuing authorities shall no longer require proof of good cause for the issuance of a public-carry license.  Accepting the Attorney General's concession that the "good cause" requirement is unconstitutional, we consider whether such requirement can be severed from the rest of California's firearm licensing scheme.

E.  Severability

" 'Generally speaking, when confronting a constitutional flaw in a statute, we try to limit the solution to the problem,' severing any 'problematic portions while leaving the remainder intact.'  [Citation.]  Because '[t]he unconstitutionality of a part of an Act does not necessarily defeat or affect the validity of its remaining provisions,' [citation] the

---

[5]    On our own motion, we take judicial notice of the existence of the statement made by the Attorney General.  (Evid. Code, § 452, subd. (h).)

'normal rule' is 'that partial, rather than facial, invalidation is the required course.' "
(*Free Enterprise Fund v. Public Company Accounting Oversight Bd.* (2010) 561 U.S. 477, 508.)

"In determining whether the invalid portions of a statute can be severed, we look first to any severability clause.  The presence of such a clause establishes a presumption in favor of severance."  (*California Redevelopment Assn. v. Matosantos* (2011) 53 Cal.4th 231, 270.)  Where, as here, the statute contains no such clause, we consider whether the invalid provision is " 'grammatically, functionally, and volitionally separable.' "  (*Id.* at p. 271.)  We agree with the analysis conducted in *In re D.L., supra*, 93 Cal.App.5th 144 and similarly conclude the criteria for severability are satisfied.  (See also *In re T.F.-G., supra*, 94 Cal.App.5th at p. 916 [following "the *D.L.* court's persuasive determination that the 'good cause' licensing requirement is severable"], petn. for review pending.)

"Grammatical separability . . . depends on whether the invalid parts 'can be removed as a whole without affecting the wording' or coherence of what remains."  (*California Redevelopment Assn. v. Matosantos, supra*, 53 Cal.4th at p. 271.)  In other words, "the valid and invalid parts of the statute can be separated by paragraph, sentence, clause, phrase, or even single words."  (*Abbott Laboratories v. Franchise Tax Bd.* (2009) 175 Cal.App.4th 1346, 1358.)  Here, the now unconstitutional "good cause" requirement in subdivision (a)(2) of the licensing statutes (§§ 26150, 26155), is grammatically detached from the other licensing requirements set forth in subdivision (a), as it is contained in a discrete subdivision.  Removing subdivision (a)(2) does not impair the wording or coherence of the remaining statutes.

Functional separability depends on whether, after separation of the invalid portion, the remainder of the statute is " ' " 'complete in itself' " ' and 'capable of independent application.' [Citation.]"  (*Abbott Laboratories v. Franchise Tax Bd., supra*, 175 Cal.App.4th at p. 1358.)  Again, the "good cause" requirement is just one of four

20

requirements to obtain a license to carry a concealed firearm. Each of those requirements are objective criteria, not reliant on the "good cause" requirement, are "complete in itself," and "capable of independent application." (See *ibid*; see also § 26150, subd. (a) [requiring: (1) good moral character; (2) good cause; (3) residency requirements; and (4) firearm training].) Removing the "good cause" requirement would have no impact on the independent application of the remainder of the statute. (Cf. *In re T.F.-G., supra*, 94 Cal.App.5th at p. 916 [finding that upon severing the "good cause" requirement, independent constitutionally valid licensing requirements remain], petn. for review pending.)

Finally, "[v]olitional separability depends on whether the remainder ' "would have been adopted by the legislative body had the latter foreseen the partial invalidation of the statute." ' " (*California Redevelopment Assn. v. Matosantos, supra*, 53 Cal.4th at p. 271.) "The issue, when assessing volitional separability, is not whether a legislative body would have preferred the whole to the part . . . . Instead, the issue is whether a legislative body, knowing that only part of its enactment would be valid, would have preferred that part to nothing, or would instead have declined to enact the valid without the invalid." (*Id*. at p. 273.) Here, the purpose of the licensing scheme is to effectuate "the government's vital public safety interest in controlling dangerous weapons." (*Nichols v. County of Santa Clara* (1990) 223 Cal.App.3d 1236, 1246.) Given this interest, we cannot conclude that the Legislature would want to do away with the remaining licensing requirements, which help propel the goal of enhancing public safety. We conclude the Legislature would prefer a licensing scheme without a "good cause" provision over having no licensing scheme at all. Accordingly, all three of the severability criteria are satisfied, and the "good cause" provision is severable from California's licensing scheme. Moreover, a contrary interpretation would thwart all efforts to regulate the concealed

21

carry of loaded firearms in an incorporated city, as contemplated by sections 26150, 26155, and 25850. (See *In re D.L., supra*, 93 Cal.App.5th at pp. 163-164.)

In sum, because the "good cause" requirement contained within the relevant statutes may be severed from the licensing scheme, we conclude that the remaining statutory framework is not rendered unconstitutional.

## DISPOSITION

We reverse the judgment and order dismissing the charge of carrying a loaded firearm in public under section 25850, and the matter is remanded with direction to the trial court to vacate the order sustaining defendant's demurrer, enter a new order overruling the demurrer, and reinstate the charge.

/s/
EARL, P. J.

We concur:

/s/
DUARTE, J.

/s/
HORST, J.*

---

\*      Judge of the Placer County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.